1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

8

| | |
|---|---|
| TAI FOONG USA, INC., a Delaware Corporation,<br><br>            Plaintiff,<br><br>      v.<br><br>CJ CHEILJEDANG CORPORATION, a Republic of Korea Corporation; CJ CAU TRE FOODS JOINT STOCK COMPANY, a Vietnamese Joint Stock Company; CJ FOODS VIETNAM CO. LTD., a Foreign Direct Investment Company in Vietnam; SCHWAN'S COMPANY, a Minnesota Corporation; SFC GLOBAL SUPPLY CHAIN, INC., a Minnesota Corporation; DOES 1–250,<br><br>            Defendants. | Case No.: _____<br><br>**COMPLAINT FOR:**<br><br>**1. MISAPPROPRIATION OF TRADE SECRETS UNDER 18 U.S.C. § 1836; AND**<br><br>**2. BREACH OF CONTRACT**<br><br>**JURY DEMAND** |

9
10
11
12
13
14
15
16

17      Plaintiff Tai Foong USA, Inc. alleges as follows:

18                              **NATURE OF THE ACTION**

19      1.      This trade secret misappropriation case is brought by a family-owned business

20 against a multinational conglomerate comprising more than 220 subsidiaries and affiliated entities

21 located in the United States and around the globe. The Defendants include CJ CheilJedang

22 Corporation, the conglomerate's primary operating and intermediary controlling entity, and four

23 subsidiaries. The conglomerate holds itself out to the public as "CJ Group" or "CJ Corp."

24

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

A.    In 1958, Ming Wui Lam established a small seafood business in Hong Kong called "Dhin Foong." In 1975, Ming Wui Lam emigrated from Hong Kong to Canada. One of his sons continued the original Dhin Foong in Hong Kong, another created and continues to operate a sister business in Canada, and a third son, Davy Lam, settled in Seattle, where he established Plaintiff Tai Foong USA, Inc. ("Tai Foong USA") in 1991.

2.    Now, Davy Lam operates Tai Foong USA with a third generation of the Lam family: his sons, Eric and Jeff Lam.

3.    Three generations of the Lam family have expended substantial time, effort, and money developing unique and distinctive Asian-style food products of a higher quality and better taste than their competitors. Tai Foong USA sells those products under its well-known brands, Northern Chef® and Royal Asia®.

4.    In the mid-2000s, Tai Foong USA began developing and refining a recipe for a frozen vegetable spring roll premised on traditional Asian recipes but modified for the American consumer's palate and capable of being frozen and reheated while maintaining its crispy texture and full flavor profile. That recipe would ultimately become a very popular product: the Royal Asia® frozen vegetable spring roll:



COMPLAINT FOR MISAPPROPRIATION OF TRADE
SECRETS AND BREACH OF CONTRACT - 2

1    5.    Tai Foong USA selected Cautre Export Goods Processing Joint Stock Co. in

2    Vietnam to manufacture its frozen vegetable spring rolls. To that end, and consistent with its

3    ongoing effort to protect the secrecy of its valuable recipes, Tai Foong USA entered a "Mutual

4    Non-Disclosure, Confidentiality and Non-Circumvention Agreement" with Cautre Export Goods

5    Processing Joint Stock Co., which expressly prohibited unauthorized use and disclosure of Tai

6    Foong USA's "recipes," "processes" and "formulae," among other things.

7    B.    From 2009 to 2019, Tai Foong USA's frozen vegetable spring rolls were sold in

8    Costco's Northwest, Midwest, and Texas regions under Tai Foong USA's Royal Asia® brand.

9    6.    The regional selling model allows Costco to cater their stores' respective offerings

10    to local tastes and to promote local products. It simultaneously enables Costco to gauge consumers'

11    interest in a product and the reliability of the supplier without requiring Costco to overextend itself

12    by offering an undesirable product, or working with a substandard supplier, on a much larger scale.

13    7.    By carefully fostering its business relationship with Costco, in 2019 Tai Foong

14    USA was granted the opportunity for a national promotion of its Royal Asia® spring rolls, meaning

15    that its spring rolls would be on Costco shelves nationwide—a considerable risk for Costco,

16    representative of the trust and goodwill Tai Foong USA had built over more than a decade.

17    8.    The national promotion was a smashing success. Sales of the Royal Asia® frozen

18    vegetable spring rolls skyrocketed. In 2021, 2022 and 2023, Tai Foong was selling more units to

19    Costco *per month* than it had in prior years. Revenue increased proportionally.

20    9.    CJ Group took notice of Tai Foong USA's success and saw an opportunity.

21    10.    In 2017, CJ CheilJedang Corporation acquired a controlling interest in Tai Foong

22    USA's Vietnamese manufacturer, Cautre Export Goods Processing Joint Stock Co., and therefore

23    had details about Tai Foong USA's production costs and profit margin, insider information about

24

COMPLAINT FOR MISAPPROPRIATION OF TRADE
SECRETS AND BREACH OF CONTRACT - 3

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

1    Tai Foong USA's relationship with Costco, and access to the production facility Tai Foong USA

2    had used for its relationship with Costco, which had been certified by Costco.

3        11.    By the middle of 2023, CJ CheilJedang Corporation, through and with a web of its

4    subsidiaries, was aggressively marketing to Costco a knockoff frozen vegetable spring roll at a

5    lower price:



    C.    The following year, Tai Foong USA's revenue from sales to Costco of its Royal

Asia® vegetable spring rolls plummeted more than $20 million.

    12.    Entities in CJ Group did not reverse engineer, independently derive, or otherwise

lawfully acquire Tai Foong USA's recipe for the Royal Asia® frozen vegetable spring rolls—only

Cautre Export Goods Processing Joint Stock Co., Tai Foong USA's former contracted vendor, was

privy to the recipe, and such knowledge was subject to a strict contractual non-disclosure

obligation.

    13.    A brazen misappropriation of Tai Foong USA's trade secrets enabled CJ Group's

usurpation of Tai Foong USA's hard-won business relationship with Costco.

    14.    With double damages for Defendants' willful and malicious appropriation, Tai

Foong USA anticipates recoverable damages in this case of approximately $100 million.

COMPLAINT FOR MISAPPROPRIATION OF TRADE
SECRETS AND BREACH OF CONTRACT - 4

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

1

**PARTIES**

2      15.     Plaintiff Tai Foong USA is a corporation organized and existing under the laws of

3   Delaware with its principal place of business in King County, Washington. It has maintained that

4   principal place of business for decades, throughout the period pertinent to this Complaint. Tai

5   Foong USA is duly authorized to conduct business in the state of Washington.

6      16.     Defendant CJ CheilJedang Corporation is a corporation organized and existing

7   under the laws of the Republic of Korea with its principal place of business in Seoul, Republic of

8   Korea.

9      17.     Defendant CJ Cau Tre Foods Joint Stock Company ("Cau Tre") is a joint stock

10  company organized and existing under the laws of Vietnam with its principal place of business in

11  Ho Chi Minh City, Vietnam.

12      18.     Defendant CJ Foods Vietnam Co. Ltd. is a foreign direct investment company

13  organized and existing under the laws of Vietnam with its principal place of business in Ho Chi

14  Minh City, Vietnam.

15      19.     Defendant Schwan's Company is a corporation organized and existing under the

16  laws of Minnesota with its principal place of business in Bloomington, Minnesota.

17      20.     Defendant SFC Global Supply Chain, Inc. is a corporation organized and existing

18  under the laws of Minnesota with its principal place of business in Marshall, Minnesota.

19      21.     On information and belief, the Doe Defendants are additional direct or indirect

20  subsidiaries of CJ CheilJedang Corporation that participated in the misappropriation of Tai Foong

21  USA's trade secrets, as described in this Complaint.

22

23

24

COMPLAINT FOR MISAPPROPRIATION OF TRADE
SECRETS AND BREACH OF CONTRACT - 5

## JURISDICTION AND VENUE

22.     The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c) because it arises under the Defend Trade Secrets Act and because the breach of contract claim arising from state law is so related to the federal claim that they form part of the same case or controversy such that this Court has supplemental jurisdiction under 28 U.S.C. 1367.

23.     Venue is proper in the Western District of Washington under 28 U.S.C. § 1391(b)(2) and intradistrict assignment to a judge in Seattle is proper under Local Civil Rule 3(e) because a substantial part of the events giving rise to Tai Foong USA's claims occurred in Seattle, Washington.

24.     The Court may exercise personal jurisdiction over Cau Tre pursuant to RCW 4.28.185 because, on information and belief, Cau Tre misappropriated Tai Foong USA's trade secret recipe for the Royal Asia® frozen vegetable spring rolls by (i) disclosing the trade secret recipe to other members of CJ Group, including Defendants, knowing and intending that such disclosure was part of CJ Group's scheme to create a competing frozen vegetable spring rolls that would be exported to the United States, and ultimately delivered to Washington, where it would be marketed and sold by CJ Group (nominatively through a U.S.-based member entity of CJ Group) to Costco at its headquarters located in Issaquah, Washington, all with full knowledge that the misappropriation would cause harm to Tai Foong USA in Seattle, Washington; and (ii) using the trade secret recipe to manufacture the competing frozen vegetable spring rolls with the same intent and knowledge. Additionally, Cau Tre entered and subsequently breached an agreement with Tai Foong USA, which by its terms is governed by Washington law, and by which Cau Tre undertook obligations to maintain the secrecy of Tai Foong USA's confidential information

COMPLAINT FOR MISAPPROPRIATION OF TRADE
SECRETS AND BREACH OF CONTRACT - 6

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

knowing that Tai Foong USA is located in Seattle, Washington and that use or disclosure of Tai Foong USA's confidential information contrary to its contractual obligations would cause harm to Tai Foong USA in Seattle, Washington.

25.    The Court may exercise personal jurisdiction over CJ Foods Vietnam Co. Ltd. pursuant to RCW 4.28.185 because, on information and belief, it used improper means to acquire the trade secret recipe from Cau Tre and used the trade secret recipe by exporting the competing frozen vegetable spring rolls, with full knowledge they were the fruit of the misappropriation, from Vietnam to the United States knowing and intending that such disclosure was part of CJ Group's scheme to create a competing frozen vegetable spring roll that would ultimately be delivered to Washington, where it would be marketed and sold by CJ Group (nominatively through a U.S.-based member entity of CJ Group) to Costco at its headquarters located in Issaquah, Washington, all with full knowledge that the misappropriation would cause harm to Tai Foong USA in Washington.

26.    The Court may exercise personal jurisdiction over Schwan's Company pursuant to RCW 4.28.185 because, on information and belief, it used improper means to acquire the trade secret recipe from Cau Tre and used the trade secret recipe by importing the competing frozen vegetable spring rolls through SFC Global Supply Chain, Inc., its subsidiary and agent, with full knowledge they were the fruit of the misappropriation, from Vietnam to the United States knowing and intending that such disclosure was part of CJ Group's conspiracy to create a competing frozen vegetable spring roll that would ultimately be delivered to Washington. Additionally, as set forth in this Complaint, Schwan's Company is the alter ego of SFC Global Supply Chain, Inc. and/or it completely dominates SFC Global Supply Chain, Inc. such that the two should be treated as one in the same. Further, on information and belief, Schwan's Company would have undertaken the

COMPLAINT FOR MISAPPROPRIATION OF TRADE
SECRETS AND BREACH OF CONTRACT - 7

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

1    SFC Global Supply Chain, Inc.'s jurisdictional contacts itself but for the existence of SFC Global

2    Supply Chain, Inc.; Schwan's Company would not have caused unaffiliated third parties or

3    vendors to engage in such jurisdictional contacts.

4          27.    The Court may exercise personal jurisdiction over SFC Global Supply Chain, Inc.

5    pursuant to RCW 4.28.185 because, on information and belief, it used improper means to acquire

6    the trade secret recipe from Cau Tre and used the trade secret recipe by importing the competing

7    frozen vegetable spring rolls, with full knowledge they were the fruit of the misappropriation, from

8    Vietnam to the United States knowing and intending that such disclosure was part of CJ Group's

9    conspiracy to create a competing frozen vegetable spring roll that would ultimately be delivered

10   to Washington. Additionally, SFC Global Supply Chain, Inc. is the only CJ Group entity listed on

11   the packaging of the competing spring rolls that ultimately were purchased by Costco, and

12   accordingly SFC Global Supply Chain, Inc. was intimately involved in the marketing and sale of

13   the competing spring roll to Costco at its headquarters located in Issaquah, Washington, all with

14   full knowledge that the misappropriation would cause harm to Tai Foong USA in Seattle,

15   Washington.

16         28.    The Court may exercise personal jurisdiction over CJ CheilJedang Corporation

17   pursuant to RCW 4.28.185 because, on information and belief, it orchestrated, directed, and

18   controlled the scheme to misappropriate, through improper use and disclosure, Tai Foong USA's

19   recipe for the Royal Asia® frozen vegetable spring roll, knowing and intending that such

20   misappropriation would culminate in the competing frozen vegetable spring roll being delivered

21   to Washington for marketing and sale to Costco at its headquarters located in Issaquah,

22   Washington, all with full knowledge that the misappropriation would cause harm to Tai Foong

23   USA in Washington. Additionally, and on information and belief, CJ CheilJedang Corporation

24

COMPLAINT FOR MISAPPROPRIATION OF TRADE
SECRETS AND BREACH OF CONTRACT - 8

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

1    controlled and was otherwise intimately involved with the other Defendants' jurisdictional

2    contacts, and all such Defendants acted at the behest of, under the direction of, and for the benefit

3    of CJ CheilJedang Corporation. Further, on information and belief, CJ CheilJedang Corporation

4    would have undertaken the other Defendants' jurisdictional contacts itself but for the existence of

5    its web of subsidiaries; CJ CheilJedang Corporation would not have caused unaffiliated third

6    parties or vendors to engage in such jurisdictional contacts.

7    　　　29.    Additionally, as set forth in this Complaint, CJ CheilJedang Corporation

8    pervasively controls Cau Tre, CJ Foods Vietnam Co. Ltd., Schwan's Company, and SFC Global

9    Supply Chain, Inc. to the degree such subsidiaries do not have separate corporate personalities and

10    instead function merely as conduits or instrumentalities of CJ CheilJedang Corporation. This

11    corporate structure, among other things, is intended to insulate CJ CheilJedang Corporation (and

12    other CJ Group member entities) from liability for the corporate misdeeds CJ CheilJedang

13    Corporation concocted, directed, and actualized through its web of subsidiaries, including the other

14    Defendants.

15    **FACTUAL ALLEGATIONS**

16    **I.    Tai Foong's History and Seattle Roots**

17    　　　30.    In 1958, Ming Wui Lam established a family seafood business in Hong Kong called

18    "Dhin Foong." That translates roughly to "continuous prosperity"—an artifact of Ming Wui Lam

19    injecting some luck into his business venture. But ultimately, luck was not necessary. Ming Wui

20    Lam and his three sons, David, Sherman and Davy, leveraged their business acumen and work

21    ethic to bring prosperity to their family enterprise.

22    　　　31.    Sherman Lam remained in Hong Kong and continues to operate the original Dhin

23    Foong seafood business. Brothers David and Davy moved to Canada and, in 1977, opened a sister

24

1    business named TFI Foods Ltd.—the cluster of letters being an abbreviation of "Tai Foong

2    International."

3        32.    In the late 1980s, Davy Lam was spending an increasing amount of time in the

4    United States, catering to its growing market for imported Asian foods, particularly seafood, with

5    recipes modified for the Western palate.

6        33.    Davy Lam recognized that the U.S. market was so strong—and growing—that it

7    warranted his presence in the country almost every day. With the full support of his brothers, Davy

8    left Canada in 1991, moved to Seattle, and founded Tai Foong USA, Inc.

9        34.    Since its founding, Tai Foong USA's headquarters has been located in a modest

10   low-rise building in the industrial area south of downtown Seattle (SoDo). That is where Tai Foong

11   USA engages in product formulation and research and development of new recipes and product

12   specifications. Among other reasons, Davy Lam chose to found Tai Foong USA in Seattle because

13   the location enables traveling with relative ease to Tai Foong USA's business partners located in

14   Thailand, China, Vietnam, India, Central America, and South America.

15       35.    In the late 1990s, Tai Foong USA began selling its products under two brands that

16   have become well known to U.S. consumers who desire high-quality Asian-inspired frozen

17   seafoods and foods: Northern Chef® and Royal Asia®.

18       36.    The niche that Tai Foong USA has developed over more than three decades is

19   creating recipes for Asian-inspired seafood and frozen appetizers that remain true to authentic

20   Asian cuisine but are modified to meet the quality and taste expectations of American consumers.

21   Tai Foong USA has devoted, and continues to devote, substantial effort, money, and time in

22   creating and refining its recipes.

23

24

COMPLAINT FOR MISAPPROPRIATION OF TRADE
SECRETS AND BREACH OF CONTRACT - 10

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

37.    Additionally, and particularly with respect to frozen appetizers, Tai Foong USA has developed, and over decades refined, recipe specifications that enable the food to maintain a full flavor profile and desirable physical characteristics when reheated by consumers in their home.

38.    These unique recipes are the figurative—and, in some cases, literal—secret sauce that drove Tai Foong USA's success. Indeed, Davy Lam was interviewed by the *Puget Sound Business Journal* over two decades ago, in 2002. Following that conversation, the writer remarked that Tai Foong USA "pays close attention to consumer tastes, and provides ***carefully tested recipes*** in which its sauces and seafoods are primary ingredients." Todd Bishop, *Seafood Importer Finds Shrimp Is No Small Business*, PUGET SOUND BUS. J. (June 16, 2002) (emphasis added).

39.    These "carefully tested recipes," sold under Tai Foong USA's Royal Asia® and Northern Chef® brands, became extremely valuable because they are unique and not available to Tai Foong USA's competitors. After being established in 1991, Tai Foong USA quickly started registering more sales than its Canadian and Hong Kong sister companies, and by 2001 it was experiencing roughly $85 million in annual revenue.

40.    Over the decades that followed, Tai Foong USA has continued to develop and refine recipes inspired by classic Asian foods, and it has used those recipes for its many popular, award-winning products, which are sold to grocery stores and restaurants around the country.

41.    Davy Lam still runs Tai Foong, which is still located in SoDo, but now with help from a third generation of the Lam family—his sons, Jeff and Eric Lam:

COMPLAINT FOR MISAPPROPRIATION OF TRADE
SECRETS AND BREACH OF CONTRACT - 11

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

*Jeff Lam (left) and Eric Lam (right) with Royal Asia® coconut shrimp and Dim Sum*

## II. Tai Foong USA's Royal Asia® Frozen Vegetable Spring Rolls

42.     In the early 2000s, Tai Foong USA sought to bring to the U.S. and other Western markets a new product: a frozen vegetable spring roll.

43.     Davy Lam traveled to Vietnam and met with various food processers and manufacturers, including Cau Tre (then named Cautre Export Goods Processing Joint Stock Co.), a company with which Tai Foong had maintained an ongoing business relationship since 2002.

44.     Cau Tre's initial proposal to Tai Foong USA was classic Vietnamese-style vegetable spring rolls with a netted skin (a/k/a wrapper)—woven rice paper made from rice flour, water, and salt. Moreover, Cau Tre's spring roll filling was made with frozen, shredded vegetables, that gave a "mushy" texture to the final product when reheated. Cau Tre was already manufacturing and selling such classic Vietnamese netted spring rolls in Vietnam, but it had not exported that product or otherwise engaged in marketing and the offering for sale of the product in the United States.

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

45.     Davy Lam was skeptical of introducing the product to the U.S. market because the classic Vietnamese-style recipe for vegetable spring rolls, and netted spring roll wrapping, were likely not palatable to a typical U.S. consumer. Nonetheless, Tai Foong USA imported small quantities of Cau Tre's Vietnamese-style netted vegetable spring rolls.

46.     Davy Lam tried selling Cau Tre's vegetable spring rolls to several national (and international) grocery store chains and foodservice providers, including Foodservices of America ("FSA"). A small quantity was sold to FSA located in Spokane, Washington, to test consumers' reaction. Sales were minimal; as Davy Lam correctly anticipated, Cau Tre's traditional Vietnamese-style netted vegetable spring rolls did not resonate with U.S. consumers.

47.     Tai Foong nonetheless believed there was space in the U.S. market for the right frozen spring roll product. Based on its deep knowledge of U.S. consumers' preferences for Asian-inspired foods, it believed a frozen vegetable spring roll would be successful if it had: (i) a unique taste profile rooted in traditional Asian recipes but refined for the American palate—a specialty of Tai Foong USA, as noted above; (ii) a recipe that evoked freshness, using fresh vegetables in the filling, including edamame, a traditionally east Asian ingredient that was rapidly gaining popularity in Western markets at the time; and (iii) a skin that would not only be consistent with Western consumers' expectations but also would retain desirable light, crispy physical characteristics and its flavor profile after being frozen and reheated by consumers. Cau Tre's traditional Vietnamese-style netted vegetable spring rolls did not have the foregoing characteristics.

48.     Although Tai Foong USA decided to pursue an alternative to Cau Tre's preexisting vegetable spring roll recipe, it desired to maintain Cau Tre as the manufacturer of the spring rolls it would ultimately import and sell in the United States. Accordingly, to enable that relationship,

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

Cau Tre and Tai Foong USA executed a contract entitled Mutual Non-Disclosure, Confidentiality and Non-Circumvention Agreement (the "Confidentiality Agreement"), a copy of which is attached to this Complaint as **EXHIBIT A**.

49.    Consistent with Tai Foong USA's and Cau Tre's intent in entering the Confidentiality Agreement, its stated purpose is to facilitate the exchange of confidential information between the parties in furtherance of their business relationship. Specifically, the parties agreed that the "[Confidentiality] Agreement is intended to protect the Disclosing Party's Confidential Information against unauthorized use or disclosure." Ex. A, ¶ 1.

50.    The "Confidential Information" subject to the Confidentiality Agreement is defined broadly to include Tai Foong USA's recipes and formulae as well as its business opportunities and agreements and negotiations with third parties:

> **Definition of Confidential Information.** "Confidential Information" means any oral, written, graphic or machine readable information including, but not limited to, that which relates to ***business opportunities***, strategies, contacts, research, business plans, ***agreements or negotiations with third parties***, materials, samples, ideas, data, contracts, permits, services, customers, vendors, pricing, marketing, ***information regarding existing clients or potential clients***, finances, products, licenses, trademarks, developments, inventions, ***processes***, designs, drawings, engineering, ***formulae***, ***recipes***, markets, software (including source and object code), hardware configuration, patents, copyright or computer programs of the Disclosing Party.

Ex. A, ¶ 2 (italic emphasis added).

51.    By entering the Confidentiality Agreement, Cau Tre agreed to a broad prohibition against its use and disclosure of Tai Foong USA's confidential information, including its recipes and business opportunities:

> The Receiving Party agrees not to use any Confidential Information disclosed to it by the Disclosing Party for its own use or for any purpose other than to carry out discussions concerning, and the undertaking of, the Relationship. Receiving Party shall not disclose or permit disclosure of the Disclosing Party's Confidential Information to third parties. Receiving Party agrees that it shall take all reasonable measures to protect the secrecy of and avoid disclosure or use of Confidential

COMPLAINT FOR MISAPPROPRIATION OF TRADE
SECRETS AND BREACH OF CONTRACT - 14

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

Information of the Disclosing Party in order to prevent it from falling into the public domain or the possession of persons other than those persons authorized under this Agreement to have any such information.

Ex. A, ¶ 3.a.

52.    Tai Foong USA went about developing its proprietary recipe for the Royal Asia® frozen vegetable spring roll and the accompanying soy ginger sauce. This was a significant undertaking for which Tai Foong USA expended substantial time, labor, and money. Tai Foong USA itself engaged in research and development for the various constituent parts of what would ultimately become Tai Foong USA's spring roll and soy ginger sauce recipes, described below.

53.    Moreover, throughout this time Tai Foong USA took steps to ensure products manufactured at Cau Tre could be sold in the United States at Costco. This included, among other things, the organizing of meetings and in-person audits, during which Costco personnel met with Cau Tre representatives at the Cau Tre facility in Vietnam:



*Cau Tre CEO Madam Binh (far right) leading Costco personnel (second and third from right) and Davy Lam (third from left) on a tour of the Cau Tre facilities*

COMPLAINT FOR MISAPPROPRIATION OF TRADE
SECRETS AND BREACH OF CONTRACT - 15

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

54.     Additionally, throughout the first production runs of Tai Foong USA's frozen vegetable spring roll, Davy Lam and individuals working for him personally travelled to Vietnam to observe Cau Tre's proposed production line in action, taste samples off the production line, and help refine the production process.

55.     Tai Foong USA also imported production samples to bring to Costco's test kitchen in Issaquah. Davy Lam personally visited Costco's test kitchen upwards of three times a week for tastings, as Tai Foong USA dialed-in the recipe and packaging.

56.     Cau Tre resisted adopting Tai Foong USA's recipe because it required hand-filling the spring rolls, a new labor-intensive process dictated by Tai Foong's recipe and production requirements.

57.     Ultimately, Tai Foong USA launched its Royal Asia® frozen vegetable spring roll product in 2009, with manufacture of the products occurring at the Costco-approved Cau Tre facilities in Vietnam. The Confidentiality Agreement remained in effect and governed that ongoing business relationship between Tai Foong USA and Cau Tre, including Cau Tre's privity to Tai Foong USA's recipe for its frozen vegetable spring roll and accompanying soy ginger sauce as well as the specifics of Tai Foong USA's business dealings and opportunities with Costco.

58.     At that time, and continuing to the present, Tai Foong USA's recipe for its Royal Asia® frozen vegetable spring roll have been zealously guarded. The recipes set forth highly detailed ingredient lists (with discrete measurements) and preparation processes for creating each of the constituent parts of the frozen vegetable spring roll product, described below.

59.     ***The Filling***. The filling of Tai Foong USA's Royal Asia® frozen vegetable spring rolls is crafted for the American palate, with a mix of carefully selected proportions of fresh

COMPLAINT FOR MISAPPROPRIATION OF TRADE
SECRETS AND BREACH OF CONTRACT - 16

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

ingredients that give it a flavor consistent with traditional Asian cuisine while also making it familiar and satisfying for U.S. consumers. The filling is the result of Tai Foong USA's deep experience selling Asian-inspired foods to U.S. consumers as well as substantial research and development effort and numerous rounds of taste testing, both in Vietnam and in the United States. The filling includes edamame—an ingredient gaining popularity in Western markets at the time of the product's launch—in an amount that makes it desirable without dominating the flavor profile.

60.    Tai Foong USA intended its recipe for the filling of its vegetable spring rolls to evoke a "freshness" in the flavor profile and texture that was lacking in more traditional spring rolls found in Asia, including the Vietnamese-style spring roll already being manufactured and sold by Cau Tre. The freshness element is particularly important in light of the ultimate market for the product (the U.S. and other Western countries). The crispness and freshness of Tai Foong USA's spring rolls is a unique characteristic and is a direct result of the carefully selected ingredients and preparation processes in Tai Foong USA's recipe.

61.    The recipe for the filling of Tai Foong USA's Royal Asia® frozen vegetable spring rolls is unique and novel, and a critical component of the product's ultimate success.

62.    Any effort to reverse engineer, independently derive, or otherwise lawfully acquire the recipe for the filling of Tai Foong USA's Royal Asia® frozen vegetable spring roll would be a substantial undertaking that would likely take years, if it is possible at all.

63.    *The Skin*. Tai Foong USA developed a recipe for a spring roll skin derived from a Thai-style pastry skin but modified to be more akin to what U.S. consumers expect from their foodstuffs—unlike Cau Tre's traditional Vietnamese-style netted skins. Among other features, the skin is thin, light and crispy. It can be cooked, frozen, and then reheated by consumers while still maintaining those desirable attributes as well as its flavor profile. This feature also creates an

COMPLAINT FOR MISAPPROPRIATION OF TRADE
SECRETS AND BREACH OF CONTRACT - 17

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

element of freshness that, as described above in connection with the product's filling, is critical and sets the Royal Asia® spring rolls apart from any other spring rolls, much less commercially available frozen foods.

64.     The recipe for the skin of Tai Foong USA's Royal Asia® frozen vegetable spring rolls is unique and novel, and a critical component of the product's ultimate success.

65.     Any effort to reverse engineer, independently derive, or otherwise lawfully acquire the recipe for the skin of Tai Foong USA's Royal Asia® frozen vegetable spring roll would be a substantial undertaking, if it is possible at all.

66.     ***Tai Foong USA's Proprietary Ginger Soy Sauce***. Every package of Tai Foong USA's Royal Asia® frozen vegetable spring rolls comes with Tai Foong USA's proprietary soy ginger sauce, the recipe for which Tai Foong USA developed in connection with its development of its Royal Asia® frozen vegetable spring rolls. The recipe is derived from the cuisine of the Shantou region of China, the Lam family's ancestral home. The food of Shantou is considered part of Cantonese cuisine, considered by many as the pinnacle of Chinese fine dining. One prevalent feature of such cuisine is a freshness quality in their food, not unlike the freshness of the filling and skins of Tai Foong USA's Royal Asia® frozen vegetable spring rolls. The freshness of the soy ginger sauce complements and underscores the freshness of the filling and skin.

67.     The recipe for the soy ginger sauce included with Tai Foong USA's Royal Asia® frozen vegetable spring rolls is unique and novel, and a critical component of the product's ultimate success.

68.     Any effort to reverse engineer, independently derive, or otherwise lawfully acquire the recipe for the soy ginger sauce included with Tai Foong USA's Royal Asia® frozen vegetable spring roll would be a substantial undertaking that would likely take years, if it is possible at all.

COMPLAINT FOR MISAPPROPRIATION OF TRADE
SECRETS AND BREACH OF CONTRACT - 18

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

69.    From the launch of the product to present, the recipes and formula Tai Foong USA used for its Royal Asia® frozen vegetable spring rolls (*i.e.*, the filling, skin, and sauce recipes) have been refined in relatively minor ways due to further research and development, as well as the seasonal availability of certain fresh ingredients. But, in general, the recipes have remained consistent, down to discrete grams-per-serving measurements and particular processes.

70.    The packaging for the Royal Asia® frozen vegetable spring rolls has also remained consistent since the product's launch. The spring rolls are sold in a cardboard box, shown below, containing fifty frozen spring rolls, with a net weight of three pounds (1.36 kilograms). Tai Foong USA designed the box, but like the spring rolls, Cau Tre manufactured the packaging.



*The front of the Royal Asia® frozen vegetable spring roll packaging*

71.    At all times, Tai Foong USA has made efforts to maintain the confidentiality of the recipes (including the formulae and processes) for its Royal Asia® frozen vegetable spring rolls and soy ginger sauce. This includes, for example, the Confidentiality Agreement with its manufacturer, Cau Tre, described above.

72.    Additionally, Tai Foong USA keeps the recipe in a secure, password-protected server at its physical location in SoDo. Access to the recipe is limited to Davy Lam and his sons, Eric and Jeff, as well as a select few management-level employees who have been with Tai Foong

COMPLAINT FOR MISAPPROPRIATION OF TRADE
SECRETS AND BREACH OF CONTRACT - 19

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

USA for decades. The recipe is not available to Tai Foong USA's other employees, much less third parties or the general public.

73.     Additionally, as a condition of their employment, all Tai Foong USA employees are required to undertake contractual obligations securing Tai Foong USA's confidential information.

74.     The foregoing measures are reasonable in the circumstances here to maintain the confidentiality and secrecy of Tai Foong USA's recipes for its Royal Asia® frozen vegetable spring rolls and soy ginger sauce.

75.     Tai Foong USA's recipes (including the formulae and processes) for its Royal Asia® frozen vegetable spring rolls and soy ginger sauce have never been in the public domain and only became known to entities and individuals without an obligation to maintain their secrecy as a result of Cau Tre's misconduct, described below.

### III.  Following a Decade of Steady Business, Costco Agrees to a National Promotion of Tai Foong USA's Royal Asia® Frozen Vegetable Spring Rolls

76.      After the 2009 launch of the Royal Asia® frozen vegetable spring rolls, Tai Foong USA primarily sold them through Costco at a regional level—meaning that Costco stores in certain regions would carry the product, but it was not on the shelves at all Costco stores in the U.S. (or elsewhere).

77.     During that period, Tai Foong USA's annual sales of the product hovered steadily in the low seven-figure range.

78.     For roughly a decade, Tai Foong USA fostered its business relationship with Costco by proving itself as a trustworthy partner and a reliable source of high-quality products that would achieve steady sales for Costco. Through this relationship, Tai Foong USA also demonstrated to

COMPLAINT FOR MISAPPROPRIATION OF TRADE
SECRETS AND BREACH OF CONTRACT - 20

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

1    Costco that a substantial market existed for frozen vegetable spring rolls with the flavor profile,

2    qualities, and freshness unique to Tai Foong USA's recipe.

3        79.    In 2019, following a decade of Tai Foong proving to Costco that the Royal Asia®

4    frozen vegetable spring roll was marketable to U.S. consumers, Costco agreed to engage in a

5    national promotion of the product. That meant Costco would increase the availability of the

6    product from regional stores to all stores in the United States This was a considerable risk for

7    Costco, because it meant that Costco would purchase a substantial amount of product at the onset

8    of the promotion—much more than previous years—in reliance on members' continued interest

9    in the Royal Asia® frozen vegetable spring roll.

10        80.    The national promotion was a resounding success. In 2020, 2021 and 2022, Tai

11    Foong USA's revenue attributable to its Royal Asia® frozen vegetable spring roll was roughly *ten*

12    *times* that of just a few years prior. The Royal Asia® frozen vegetable spring roll became a staple

13    product at Costco stores across the nation.

14        81.    Cau Tre was at all times aware of the specifics of Tai Foong USA's business

15    relationship with Costco because it had a need to know: it manufactured the frozen vegetable

16    spring rolls and the packaging, and had a front row seat to the national promotion that Tai Foong

17    had secured as a result of its decade-long push for the product in Costco stores.

18        82.    Having been involved in Tai Foong USA's failed attempt to market Cau Tre's

19    traditional Vietnamese-style spring roll over a decade earlier, Cau Tre knew that the success of Tai

20    Foong USA's relationship with Costco was premised largely on the recipe and production process

21    Tai Foong USA created specifically for the U.S. market.

22

23

24

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

83.    Additionally, and on information and belief, Cau Tre knew that there were not other, similar frozen vegetable spring rolls being produced, and therefore an opportunity existed to compete for the business opportunity Tai Foong created with Costco.

### IV.  CJ Group Purchases Cau Tre and Misappropriates Tai Foong USA's Recipe

84.    CJ Group is one of the largest "chaebol" (재벌), a South Korean term that roughly translates to "rich family" or "financial clique." Colloquially, a chaebol is a diversified, Republic of Korea-based multinational conglomerate operated by members of the same family.

85.    CJ Group was originally a branch of Samsung Group—one of the largest, most well-recognized conglomerates on Earth. On information and belief, CJ Group was spun off from Samsung as a separate venture in or around 1993.

86.    The ultimate parent company of the CJ Group conglomerate is CJ Corporation, a Republic of Korea company headquartered in Seoul.  CJ Corporation is a publicly traded company, listed on Korea Exchange (KRX: 001040). CJ Corporation has a market capitalization of roughly $2.9 billion USD and recognizes gross revenue exceeding $30 billion USD annually.

87.    On information and belief, CJ Corporation's primary purpose is to control other companies through ownership of their stock, *i.e.*, holding the shares of its subsidiaries and controlling their governance and business operations. Further, and on information and belief, the primary source of CJ Corporation's revenue is its subsidiaries, and it recognizes that revenue in the form of royalties for use of its brand, lease payments, and dividends.

88.    Defendant CJ CheilJedang Corporation is a publicly traded company, listed on Korea Exchange (KRX: 097950) and recognizes gross revenue exceeding $20 billion USD annually. According to its annual securities filings, CJ CheilJedang Corporation has over 220 subsidiaries (direct and indirect), with roughly twenty in the Republic of Korea and the remainder spread around the globe.

COMPLAINT FOR MISAPPROPRIATION OF TRADE
SECRETS AND BREACH OF CONTRACT - 22

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

89.     On information and belief, Defendant CJ CheilJedang Corporation is one of CJ Corporation's eight direct subsidiaries, and it is the CJ Group conglomerate's primary operating and intermediary controlling entity (with the primary controlling entity being CJ Corporation itself).

90.     On information and belief, CJ CheilJedang Corporation is dominated by CJ Corporation and makes all or effectively all material decisions at its behest and subject to its ultimate approval. For example, and on information and belief, for a substantial period, and until recently, both companies shared a headquarters located at 330 Dongho-ro, Jung-gu, Seoul. Moreover, there is substantial overlap in formal and informal governance, including notably Sohn Kyung Shik, who is the co-chair of CJ Corporation's board of directors as well as its co-Chief Executive Officer, and who also serves as co-chair of CJ CheilJedang Corporation's board of directors as well as its co-Chief Executive Officer.

91.     On information and belief, the CJ Group conglomerate generally operates as a unitary entity, with subsidiaries completely dominated by CJ Corporation itself and through its direct subsidiaries, most notably CJ CheilJedang Corporation, which directs and controls its subsidiaries' manufacture, importation, marketing, offering for sale, sale, and distribution of goods. On information and belief, CJ Group member entities defer to CJ CheilJedang Corporation on all or effectively all material business decisions and share financial and personnel resources.

92.     In late 2016, CJ CheilJedang Corporation purchased roughly 47% of the outstanding stock of Cau Tre, and it took measures to gain control of the internal governance of Cau Tre, including for example by placing four CJ Group personnel into management roles at the company, including the Chairman and CEO of its Vietnamese subsidiary, CJ Foods Vietnam Co., Ltd., whom CJ CheilJedang Corporation installed on Cau Tre's board of directors.

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

93.     By March 2017, CJ CheilJedang Corporation became Cau Tre's largest shareholder, and by the end of the year it owned roughly 71% of the company's outstanding shares—an amount CJ CheilJedang Corporation continues to hold, on information and belief, through its wholly owned holding subsidiary company, CJ Foods Asia Holdings Limited.

94.     Shortly thereafter, Cau Tre changed its name to CJ Cau Tre Foods Joint Stock Company.

95.     On a website operated by CJ Foods Vietnam Co., Ltd., Cau Tre is referenced as one of the "brands" under the "CJ Foods" umbrella. *Our Brands*, CJ Foods, www.cjfoods.com.vn/en/our-brands [perma.cc/8CBT-F2BH]. Other pages on that website refer to CJ CheilJedang Corporation as the actual entity operating the brand, such as the "CJ Story" tab, which explains the following:

> Established in 1953 as the first sugar producer in Korea, CJ Cheildjang has been leading the Korean food industry for over 60 years. We've sought to spread Korea's delectable flavors to every corner of the world, with quality products that can satisfy local palates without losing their distinctive and unique Korean qualities. We are committed to improving the lives of people in Vietnam, and around the world, by supplying high quality, hygienic and perfect tasting foods. Join us to create a healthy & convenient daily life.

*CJ Story*, CJ Foods, https://cjfoods.com.vn/en/cau-chuyen-cjfoods [perma.cc/ZL3E-FT3A].

96.     On information and belief, CJ CheilJedang Corporation has for years extended a substantial loan to Cau Tre and also guarantees its debts. This is evidenced by CJ CheilJedang Corporation's disclosures in its 2023 and 2024 annual securities filings, copies of which are attached to this Complaint (translated, in pertinent part, from Korean to English) as **EXHIBIT B** and **EXHIBIT C**, respectively. Ex. B at 387, 477; Ex. C at 478, 570.

97.     On information and belief, Cau Tre was experiencing substantial annual losses in 2016 and 2017, at the time CJ CheilJedang Corporation acquired control of it, and therefore CJ CheilJedang Corporation was searching for ways to increase its revenue by leveraging the parent

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

company's deep coffers and international network of subsidiaries, including its logistics, distribution, and sales subsidiaries in the United States.

98.    As set forth above, in 2019 and 2020 Cau Tre (now CJ Cau Tre) dramatically increased production of Tai Foong USA's Royal Asia® frozen vegetable spring rolls due to their growing popularity and Costco's national promotion of the product, and Cau Tre knew of Tai Foong USA's business opportunities and agreements with Costco regarding that product.

99.    On information and belief, as a result of CJ CheilJedang Corporation's strict control over Cau Tre's operations, governance and finances, it became aware of the dramatic increase in Cau Tre's production of Royal Asia® frozen vegetable spring rolls and, accordingly, learned of the basis of same, in response to which Cau Tre turned over all material facts, including but not limited to: (i) specific information regarding Tai Foong USA's business opportunities with Costco related to a frozen vegetable spring roll product; (ii) that Tai Foong USA had entrusted Cau Tre with its recipes, processes, and formulae necessary for the production of its Royal Asia® frozen vegetable spring rolls; and (iii) the existence of the Confidentiality Agreement between Cau Tre and Tai Foong.

100.    On information and belief, CJ CheilJedang Corporation developed, put into action, and otherwise orchestrated a scheme by which it, through a network of subsidiary entities described below, would utilize Tai Foong USA's recipes to usurp its business opportunity with Costco by offering identical, or effectively identical, frozen vegetable spring rolls to Costco under CJ CheilJedang Corporation's "bibigo" brand.

101.    On information and belief, and in light of CJ CheilJedang Corporation's dominance and control over its subsidiaries' corporate governance and business decision-making, all of the relevant entities within the CJ Group, including the Defendants, agreed to the scheme with full

COMPLAINT FOR MISAPPROPRIATION OF TRADE
SECRETS AND BREACH OF CONTRACT - 25

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

knowledge of the material facts, including the facts related to the use of Tai Foong USA's recipe as well as the Confidentiality Agreement governing Cau Tre and Tai Foong USA's business relationship.

102.    In connection with its scheme to utilize a misappropriated trade secret recipe to sell spring rolls in the United States (specifically, to Costco in Issaquah, Washington), CJ CheilJedang Corporation for the first time applied for U.S. trademark registrations for its "bibigo" brand covering "spring rolls." Specifically, on March 16, 2022, CJ CheilJedang Corporation submitted an application to the World Intellectual Property Organization (WIPO) for the mark "bibigo" for use in connection with, among other things, "spring rolls" in International Class 030. That application matured into International Reg. No. 1,675,910, which CJ CheilJedang Corporation extended to the United States under the Madrid Protocol by submitting Application Serial No. 79/346,606 to the United States Patent & Trademark Office (USPTO) on or about August 4, 2022, which application matured into U.S. Reg. No. 7,152,978. Additionally, on September 25, 2023, CJ CheilJedang Corporation submitted an application to WIPO for the mark "bibigo" (& design), shown below, for use in connection with, among other things, "spring rolls" in International Class 030. That application matured into International Reg. No. 1,774,961, which CJ CheilJedang Corporation extended to the United States under the Madrid Protocol by submitting Application Serial No. 79/388,965 to the United States Patent & Trademark Office (USPTO) on or about February 8, 2024, which application matured into U.S. Reg. No. 7,152,978.



*The design mark that is the subject of the '978 Registration*

COMPLAINT FOR MISAPPROPRIATION OF TRADE
SECRETS AND BREACH OF CONTRACT - 26

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

103.    Publicly available trademark filings do not disclose that CJ CheilJedang Corporation owned any bibigo or bibigo-formative trademark registrations covering spring rolls—or at least any registrations extending protections to the United States—before securing the foregoing registrations between 2022 and 2024.

104.    On information and belief, CJ CheilJedang Corporation regularly utilizes its various subsidiaries to manufacture, export, import, market, sell, and distribute goods in countries around the world. As explained by CJ CheilJedang Corporation in its securities filings, it "purchases goods from its overseas manufacturing subsidiaries and conducts intermediary trade transactions by selling the goods to end customers through its overseas sales subsidiaries and associates." Ex. B at 479; Ex. C at 572.

105.    On information and belief, Cau Tre manufactured the bibigo-branded knockoff spring rolls and soy ginger sauce and did so intending that the product would be exported to the United States, where some or all such spring rolls would be marketed to Costco at its headquarters in Issaquah, Washington, and while knowing that the principal harm caused by its misappropriation of the recipe and its breach of the Confidentiality Agreement would be felt by Tai Foong USA in Seattle, Washington. Additionally, and on information and belief, Cau Tre engaged in this conduct at the direction of, and for the benefit of, CJ CheilJedang Corporation, which at all times knew of the nature of the harm described in this paragraph.

106.    According to publicly available data, CJ CheilJedang Corporation's wholly owned Vietnamese subsidiary, Defendant CJ Foods Vietnam Co., Ltd., exported over 60 containers with a product description of "Bbg Vegetable Spring Rolls Minus Degrees Celsius" from Vietnam to the port in Los Angeles, California, with nearly all shipments occurring in November and December 2023. On information and belief, those containers contained the bibigo-branded

COMPLAINT FOR MISAPPROPRIATION OF TRADE
SECRETS AND BREACH OF CONTRACT - 27

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

knockoff spring rolls, and CJ Foods Vietnam Co., Ltd. knew of that fact, knew that such spring rolls were the fruit of a misappropriation of Tai Foong USA's trade secrets, and further exported those spring rolls to the United States knowing and intending that some or all such spring rolls would be marketed to Costco at its headquarters in Issaquah, Washington, and while knowing that the principal harm caused by its misappropriation of the recipe would be felt by Tai Foong USA in Seattle, Washington. An example Bill of Lading related to the final shipment, dated December 23, 2023, is attached to this Complaint as **EXHIBIT D**. Additionally, and on information and belief, CJ Foods Vietnam Co., Ltd. engaged in this conduct at the direction of, and for the benefit of, CJ CheilJedang Corporation, which at all times knew of the nature of the products being exported from Vietnam and imported into the United States and further directed those products to be delivered to Costco at its headquarters in Issaquah, Washington.

107.    As shown on that example Bill of Lading, the buyer of the shipped goods was Defendant SFC Global Supply Chain, Inc., a U.S. company headquartered in Minnesota. On information and belief, SFC Global Supply Chain, Inc. is a wholly owned subsidiary of Schwan's Company, also headquartered in Minnesota, of which CJ CheilJedang Corporation is the majority shareholder as of 2019, when it acquired roughly three-quarters of the outstanding shares of Schwan's Company.

108.    As with its other subsidiaries, and on information and belief, CJ CheilJedang Corporation exerts complete control and dominance over the business affairs of Schwan's Company as well as Schwan's Company's own subsidiaries, including SFC Global Supply Chain, Inc. For example, the chairman of Schwan's Company's board of directors is Minsok Pak, who is also contemporaneously a co-CEO of CJ CheilJedang Corporation and in charge of its food division. Additionally, CJ CheilJedang Corporation installed other CJ Group personnel on

COMPLAINT FOR MISAPPROPRIATION OF TRADE
SECRETS AND BREACH OF CONTRACT - 28

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

Schwan's Company's executive leadership team, including Won Kang, who had previously worked directly for CJ CheilJedang Corporation in the area of "global business management" and whose assignment as described on Schwan's company's website "included post-merger integration initiatives that would support rapid growth in North America." *Our Leadership Team*, SCHWAN'S COMPANY, www.schwanscompany.com/about-us/leadership.htm [perma.cc/363Y-DEJA].

109.    On information and belief, the Chief Executive Officer of Schwan's Company at the time of the acquisition, Dimitrios Smyrnios, retained his position but was also named as chairman of CJ Foods USA, Inc.'s Board of Directors at CJ CheilJedang Corporation's behest.

110.    On information and belief, both CJ CheilJedang Corporation and Schwan's Company viewed the 2019 acquisition as akin to a merger rather than an acquisition of a separate and discrete company. For example, below is a portion of an interview published by CJ CheilJedang Corporation on its website in or about January 2024, with two individuals on CJ CheilJedang Corporation's global strategic products (GSPs) team:

> Q.    How did **the merger** between CJ CheilJedang and Schwan's Company help contribute to bibigo's growth in the U.S.?
>
> A.    . . . In 2019, **when the two companies merged**, bibigo was primarily a club business in the U.S., which means it was a brand that was only sold to warehouse merchants such as Costco and Sam's Club. We took the bibigo products and fused them into our distribution network by leveraging our direct store delivery (DSD) capabilities. As a result, we achieved $170 million growth year-over-year between 2019 to 2022.

*CJ's Journey with Schwan's Company and the Rise of bibigo*, CJ NEWSROOM (Jan. 9, 2024), www.newsroom.cj.net/cjs-journey-with-schwans-company-and-the-rise-of-bibigo/ [perma.cc/KW3T-4X2Y] (emphasis added).

111.    One of the individuals being interviewed, Brad Smith, holds himself out on LinkedIn as the "Head of Global Brands" at CJ CheilJedang Corporation and as a Vice President at Schwan's Company, noting that the former is a "Concurrent Role with Schwan's Position," and

COMPLAINT FOR MISAPPROPRIATION OF TRADE
SECRETS AND BREACH OF CONTRACT - 29

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

1    further describes his responsibilities at CJ CheilJedang Corporation as including "managing the

2    brand's global innovation strategy with cross-functional partners and country teams," with said

3    country teams being, on information and belief, CJ CheilJedang Corporation's subsidiaries. On

4    information and belief, Brad Smith is one of several individuals actively employed by both CJ

5    CheilJedang Corporation and Schwan's Company.

6         112.    On information and belief, the concept of "post-merger integration," as described

7    on Schwan's Company's website in connection with Won Kang, included Schwan's Company's

8    acquisition of all the outstanding shares in CJ Foods USA, Inc., a Delaware corporation

9    headquartered in California, from CJ America, Inc., a Delaware corporation headquartered in

10   Delaware, the latter being CJ CheilJedang Corporation's primary U.S.-based operating subsidiary.

11        113.    On information and belief, the transfer of CJ Foods USA, Inc.'s shares from CJ

12   America, Inc. to Schwan's Company occurred in or about 2023 and was completed at the direction

13   of CJ CheilJedang Corporation. One Korean news publication quotes a representative of CJ

14   CheilJedang Corporation as follows:

> CJ CheilJedang said in a statement Thursday that the decision was made to "enhance the competitiveness of its North American food business" and that the change is "expected to make the overall decision-making processes of the two businesses faster."

*CJ CheilJedang to Operate North American Business Under One Company*, KOREA JOONGANG

DAILY (Aug. 18, 2022), www.koreajoongangdaily.joins.com/2022/08/18/business/industry/

Korea-cj-Cjcheiljedang/20220818173530836.html [perma.cc/CZ9Z-UJE3]. The article goes on to

note that, "With CJ Foods USA becoming a wholly owned subsidiary of Schwan's Company, the

two will work together for marketing, mapping out business plans together, and use each other's

infrastructure." *Id*.

COMPLAINT FOR MISAPPROPRIATION OF TRADE
SECRETS AND BREACH OF CONTRACT - 30

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

114.    Moreover, similar to its intertwined financial ties with Cau Tre, CJ CheilJedang Corporation guaranteed Schwan's Company's debts. Ex. B at 477; Ex. C at 570.

115.    On information and belief, and as a direct subsidiary of Schwan's Company and thus an indirect subsidiary of CJ CheilJedang Corporation, SFC Global Supply Chain, Inc. acts at the behest of, and under the control of, Schwan's Company and ultimately CJ CheilJedang Corporation. Indeed, SFC Global Supply Chain, Inc.'s leadership is almost entirely comprised of the leadership of Schwan's company:

| Individual | Title at SFC Global Supply Chain[1] | Title at Schwan's Company[2] |
|---|---|---|
| Soohee Lee | Director | Chief Financial Officer |
| Brian Schiegg | Director | Chief Executive Officer |
| Tony Puri | Chief Executive Officer | Executive Vice President |
| Scott Xi | Secretary | Senior Vice President |
| Mark Carter | President | Executive Vice President |
| Helen Andries | Treasurer | Unknown or N/A |
| Thomas Judd | Assistant Treasurer | Unknown or N/A |

116.    On information and belief, SFC Global Supply Chain, Inc. was the buyer of all or substantially all of the bibigo-branded knockoff spring rolls that CJ Foods Vietnam Co., Ltd. exported from Vietnam to the United States at CJ CheilJedang Corporation's direction and behest.

117.    SFC Global Supply Chain, Inc. is the only CJ group entity listed on the packaging of the bibigo-branded knockoff spring rolls:

---

[1] Information sourced from the Annual Report that SFC Global Supply Chain, Inc. filed with the Florida Secretary of State on or about March 28, 2025, a copy of which is attached to this Complaint as **EXHIBIT E**.

[2] *Our Leadership Team*, SCHWAN'S COMPANY, www.schwanscompany.com/about-us/leadership.htm [perma.cc /363Y-DEJA].

COMPLAINT FOR MISAPPROPRIATION OF TRADE
SECRETS AND BREACH OF CONTRACT - 31

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

1
2
3
4
5
6
7
8
9
10
11
12



13    118.    On information and belief, SFC Global Supply Chain, Inc. imported the bibigo-

14 branded knockoff spring rolls knowing that such spring rolls were the fruit of a misappropriation

15 of Tai Foong USA's trade secrets and intending that some or all such spring rolls would be

16 marketed to Costco at its headquarters in Issaquah, Washington, and while knowing that the

17 principal harm caused by its misappropriation of the recipe would be felt by Tai Foong USA in

18 Seattle, Washington. Additionally, and on information and belief, SFC Global Supply Chain, Inc.

19 engaged in this conduct at the direction of, and for the benefit of, Schwan's Company and,

20 consequentially, CJ CheilJedang Corporation, which at all times knew of the nature of the harm

21 described in this paragraph.

22    119.    The trade secret misappropriation that is the subject of this Complaint was

23 committed intentionally and with malice. On information and belief, each of the ostensibly

24 separate Defendant CJ Group entities was aware of the relevant terms of the Confidentiality

Agreement between Cau Tre and Tai Foong USA and also knew that the recipe for the bibigo-branded knockoff spring rolls was the fruit of confidential information that Tai Foong USA disclosed to Cau Tre pursuant to the Confidentiality Agreement.

120.     Further, on information and belief, CJ CheilJedang Corporation causes employees of CJ Group to take regular business ethics courses led by its in-house counsel, which cover trade secret violations. This is embodied in the "CJ Code of Business Conduct," which applies to "all CJ employees worldwide" and recognizes that confidential information includes "non-public information relating to our customers, shareholders, co-workers and business partners" such as "[p]roduct manufacturing process, research and technical data, and information relating to new inventions or technological innovations." The Code of Business Conduct does not discuss siloing CJ Group's business partners' confidential information within the entity or entities with which any specific business partner actually does business, and, on information and belief, CJ Group regularly shares, makes available, and otherwise permits the dissemination of business partners' confidential information within CJ Group, generally.

121.     On information and belief, had CJ Group originally and independently developed Tai Foong USA's frozen spring roll recipe, it would zealously guard it against use by, or disclosure to, third parties.

**V.     CJ Group Attempts to Usurp Tai Foong USA's Business with Costco by Utilizing the Trade Secret Recipe**

122.     In June 2023, a Costco buyer inquired with Tai Foong USA about its contractual relationship with Cau Tre. This ultimately led Tai Foong USA to investigate and discover that CJ Group was misappropriating its trade secret recipe for the Royal Asia® frozen vegetable spring rolls (through the conspiracy set forth above) and marketing it to Costco to usurp Tai Foong USA's relationship and future business opportunities with Costco.

COMPLAINT FOR MISAPPROPRIATION OF TRADE
SECRETS AND BREACH OF CONTRACT - 33

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

123.    That was the first time Tai Foong USA had any reason to believe that CJ Group had misappropriated its trade secrets. Leading up to that, however, the relationship between Tai Foong USA and Cau Tre—its longtime business partner and supplier—had become strained. The most notable anecdote occurred in 2022, when Davy Lam traveled to Vietnam for a planned, normal-course-of-business trip to Cau Tre's manufacturing facility. Upon arrival, Cau Tre refused Davy Lam's access to the facility, despite him regularly visiting in the past. In hindsight, it is believed that, at the time of Davy Lam's visit, Cau Tre had already started creating the bibigo-branded knockoff spring rolls and therefore sought to conceal that fact from Davy Lam.

124.    The bibigo-branded knockoff spring rolls are identical, or virtually identical, to Tai Foong USA's frozen vegetable spring rolls in nearly every material respect. This is even apparent from the manner in which the products are packaged, namely, they are sold in an identical cardboard box (size, shape, dimensions, material, etc.) and each box contains exactly fifty spring rolls and includes soy ginger sauce, with an identical gross weight (1.36kg):

 

The only material difference between the packaging is their dress, which are arguably confusingly similar.

125.    The constituent parts of the bibigo-branded knockoff spring rolls are identical, or virtually identical, to those of the Royal Asia® frozen vegetable spring rolls. Thus, the two competing spring rolls have identical, or virtually identical, physical attributes and taste profiles—

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

features critical to the product's success, as Cau Tre (and, consequently, CJ Group generally) was aware as a result of the relationship between Tai Foong USA and Cau Tre, which was at all pertinent times governed by the Confidentiality Agreement.

126. CJ Group, through its U.S. subsidiary SFC Global Supply Chain, Inc., specifically and intentionally targeted Costco with marketing efforts related to the bibigo-branded knockoff spring rolls. On information and belief, this occurred because Cau Tre (and, consequently, CJ Group generally) was aware of initial and foreseeable future success of the national promotion of Tai Foong USA's Royal Asia® frozen vegetable spring rolls.

127. Accordingly, and on information and belief, CJ Group intended to usurp Tai Foong USA's lucrative relationship and business opportunities with Costco by utilizing Tai Foong USA's confidential and trade secret recipe (including the formulae and processes) for the Royal Asia® frozen vegetable spring rolls, which was known to CJ Group's recently acquired subsidiary, Cau Tre, despite that information being subject to the Confidentiality Agreement.

128. Following the June 2023 communication with Costco described above, Tai Foong and CJ Group have engaged in a contentious duel for Costco's business—an opportunity Tai Foong USA cultivated through over a decade of effort and at substantial expense.

129. This includes Tai Foong USA's direct communications with Costco at varying levels. Understandably, as a third-party to the dispute, Costco has been hesitant to stake out a firm position and has continued to purchase Tai Foong USA's Royal Asia® frozen vegetable spring rolls in much diminished quantities.  CJ Group's knockoff spring rolls have supplanted Tai Foong USA's place on Costco's roster of nationwide producers.

130. As the direct and proximate cause of CJ Group's misappropriation of Tai Foong USA's trade secrets and its attempted and partially actualized usurpation of Tai Foong USA's

COMPLAINT FOR MISAPPROPRIATION OF TRADE
SECRETS AND BREACH OF CONTRACT - 35

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

relationship and opportunities with Costco, along with Cau Tre's related breach of the Confidentiality Agreement, Tai Foong USA's annual gross revenue attributable to the sale of its Royal Asia® frozen vegetable spring rolls to Costco dropped over $20 million between 2023 and 2024.

131.    As the direct and proximate cause of CJ Group's misappropriation, Tai Foong USA had no choice but to identify, establish a relationship with, and transfer the manufacture of its Royal Asia® frozen vegetable spring roll to a new business, causing Tai Foong USA unavoidable actual and consequential expenses.

132.    CJ Group has indicated to Tai Foong USA, through counsel, that it will not voluntarily cease its blatantly illegal conduct. Accordingly, Tai Foong USA was faced with deciding whether to forfeit the fruit of the labor it expended for over two decades or sling a proverbial stone at a sprawling multinational giant. This suit is the latter.

## FIRST CLAIM FOR RELEIF
### Misappropriation of Trade Secrets Under the Defend Trade Secrets Act
### 18 U.S.C. § 1836(b)
### (Against All Defendants)

133.    Tai Foong USA incorporates all previous paragraphs by reference.

134.    Tai Foong USA is the owner of the trade secret recipe (including the formulae and processes) for the Royal Asia® frozen vegetable spring roll and accompanying soy ginger sauce.

135.    Tai Foong USA used the recipe in interstate and foreign commerce.

136.    Tai Foong USA has taken reasonable measures to keep the recipe secret.

137.    The recipe derives independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. In particular, and as set forth in this Complaint, it took significant time, money, expertise, and effort to develop

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

and refine the recipe. The recipe derives value from not being known because a person with access to the recipe could develop a frozen vegetable roll at a great accelerated pace with less costs and risks than a person who had no access to the recipe, if such person could develop the recipe at all.

138.    To date, Defendants' misappropriation has caused actual loss to Tai Foong USA in an amount exceeding $20 million, and the amount of Tai Foong USA's actual loss continues to accrue.

139.    On information and belief, Defendants' misappropriation has unjustly enriched them in an amount beyond Tai Foong USA's actual losses.

140.    Defendants' misappropriation was willful and malicious.

141.    Absent injunctive relief, Tai Foong USA will suffer irreparable harm, including, but not limited to, irreversible loss of market share, business opportunities, and valuable goodwill.

142.    Accordingly, Tai Foong USA is entitled to (1) preliminary and permanent injunctive relief; (2) an award of damages for actual loss; (3) an award of damages for unjust enrichment; (4) a reasonable royalty; (5) exemplary damages in an amount of two times the damages awarded; (6) a complete accounting of matters arising from Defendants' misappropriation, including an accounting of all products derived from the misappropriation and all resultant revenue, profits, and transactions; and (7) an award of its reasonable attorney fees and costs.

COMPLAINT FOR MISAPPROPRIATION OF TRADE
SECRETS AND BREACH OF CONTRACT - 37

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

## SECOND CLAIM FOR RELEIF
### Breach of Contract
### (Against Cau Tre)

143.    Tai Foong USA incorporates all previous paragraphs by reference.

144.    Since its Effective Date, the Confidentiality Agreement was a binding contract between Tai Foong USA and Cau Tre, and it governed the exchange of Confidential Information (defined therein) between them, including, but not limited to, "recipes," "formulae," "processes," "business opportunities," and "agreements or negotiations with third parties."

145.    The Royal Asia® frozen spring roll recipe and accompanying soy ginger sauce falls within the scope of "recipes," "formulae," and "processes" that are Confidential Information subject to the Confidentiality Agreement.

146.    Cau Tre breached the Confidentiality Agreement by using and disclosing the recipe, without Tai Foong USA's authorization, for its own purposes and the purposes of the CJ Group at large.

147.    The specifics of Tai Foong USA's ongoing business relationship with Costco fall within the scope of "business opportunities" and "agreements or negotiations with third parties" subject to the Confidentiality Agreement.

148.    Cau Tre breached the Confidentiality Agreement by using and disclosing the specifics of Tai Foong USA's ongoing business relationship with Costco, without Tai Foong USA's authorization, for its own purposes and the purposes of the CJ Group at large.

149.    Tai Foong USA has suffered damages as a result of Cau Tre's breaches of the Confidentiality Agreement, including lost profits, the value of lost business opportunities, and the value of the secrecy of its Royal Asia® frozen vegetable spring roll recipe as well as the secrecy of the specifics of Tai Foong USA's ongoing business relationship with Costco.

COMPLAINT FOR MISAPPROPRIATION OF TRADE
SECRETS AND BREACH OF CONTRACT - 38

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

150.    By entering the Confidentiality Agreement, Cau Tre agreed to the following:

The Receiving Party agrees that its obligations set forth in this Agreement are necessary and reasonable in order to protect the Disclosing Party and its business. The Receiving Party expressly agrees that due to the unique nature of the Disclosing Party's Confidential Information, monetary damages would be inadequate to compensate the Disclosing Party for any breach by the Receiving Party of its covenants and agreements set forth in this Agreement. Accordingly, the Receiving Party agrees and acknowledges that any such violation or threatened violation shall cause irreparable injury to the Disclosing Party and that, in addition to any other remedies that may be available, in law, in equity or otherwise, the Disclosing Party shall be entitled to obtain injunctive relief against the threatened breach of this Agreement or the continuation of any such breach by the Receiving Party, without the necessity of proving actual damages.

151.    Accordingly, Tai Foong USA is entitled to (1) its direct and consequential damages; (2) preliminary and permanent injunctive relief; and (3) a complete account of matters arising from Cau Tre's breach, including an accounting of all products derived from the use and disclosure of Cau Tre's uses and disclosures of Tai Foong USA's Confidential Information and all resultant revenue, profits, and transactions.

## PRAYER FOR RELIEF

WHEREFORE, Tai Foong USA prays that this Court enter judgment in its favor on each and every claim for relief set forth above and award relief including, but not limited to:

A.  Preliminarily and permanently enjoining Defendants, their officers, employees, agents, subsidiaries, representatives, distributors, dealers, members, affiliates, internet service providers, and all persons acting in concert or participation with them from misappropriating Tai Foong USA's recipe for Royal Asia® frozen vegetable spring rolls.

B.  Requiring Defendants to deliver to Tai Foong USA all copies of materials containing or derived from the recipe or that otherwise violate any of Tai Foong USA's rights described herein.

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

C.  Requiring that Defendants provide a comprehensive accounting of matters arising from Defendants' misappropriation, including an accounting of all products derived from the misappropriation and all resultant revenue, profits, and transactions.

D.  Awarding Tai Foong USA monetary relief including damages for actual losses sustained by Tai Foong USA and disgorgement of Defendants' ill-gotten gains, all doubled pursuant to 18 U.S.C. § 1836(b)(3)(C), as well as any and all direct and consequential damages arising from Cau Tre's breach of the Confidentiality Agreement.

E.  Awarding Tai Foong USA its costs of suit and reasonable attorney fees.

F.  Awarding such other and further relief as this Court may deem just and appropriate.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Tai Foong USA hereby demands trial by jury of all issues so triable that are raised herein or which hereinafter may be raised in this action.

//

COMPLAINT FOR MISAPPROPRIATION OF TRADE
SECRETS AND BREACH OF CONTRACT - 40

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

1    DATED this 16th day of December, 2025.

2

3                                    STOKES LAWRENCE, P.S.

4

5                          By:  _s/Justo G. González_____
                                Justo G. González (WSBA #39127)

6                          By:  _s/Joshua D. Harms_____
                                Joshua D. Harms (WSBA #55679)

7                          By:  _s/Emily G. Zughaib_____
                                Emily G. Zughaib (WSBA #64491)

8                                1420 Fifth Avenue, Suite 3000
                                 Seattle, Washington 98101-2393

9                                Telephone:  (206) 626-6000
                                 Fax:  (206) 464-1496

10                               JGG@stokeslaw.com
                                 Joshua.Harms@stokeslaw.com

11                               Emily.Zughaib@stokeslaw.com

12                               *Attorneys for Tai Foong USA, Inc,*

13

14

15

16

17

18

19

20

21

22

23

24

COMPLAINT FOR MISAPPROPRIATION OF TRADE
SECRETS AND BREACH OF CONTRACT - 41

# EXHIBIT A

## MUTUAL NON-DISCLOSURE, CONFIDENTIALITY
### AND
### NON-CIRCUMVENTION AGREEMENT

This Mutual Non-disclosure, Confidentiality and Non Circumvention Agreement (the "Agreement") is made as of January 8, 2008, by and between TAI FOONG USA INC., a Washington limited liability company ("TAI FOONG"), and  Cautre Export Goods Processing Joint Stock Co, (each a "party" and collectively the "parties").

1.    **Purpose.** TAI FOONG and Cautre Foods Joint Stock Company wish to evaluate business opportunities and forge a business relationship between the parties (and third parties) (hereinafter referred to as the "Relationship"). In the course of discussions and ongoing business relationship between the parties, each party may disclose its Confidential Information (as defined below) to the other. The party disclosing the Confidential Information shall be referred hereinafter as the "Disclosing Party" and the party receiving the Confidential Information shall be referred hereinafter as the "Receiving Party". This Agreement is intended to protect the Disclosing Party's Confidential Information against unauthorized use or disclosure.

2.    **Definition of Confidential Information.** "Confidential Information" means any oral, written, graphic or machine-readable information including, but not limited to, that which relates to business opportunities, strategies, contacts, research, business plans, agreements or negotiations with third parties, materials, samples, ideas, data, contracts, permits, services, customers, vendors, pricing, marketing, information regarding existing clients or potential clients, finances, products, licenses, trademarks, developments, inventions, processes, designs, drawings, engineering, formulae, recipes, markets, software (including source and object code), hardware configuration, patents, copyright or computer programs of the Disclosing Party.

3.    **Nondisclosure of Confidential Information.**

  a.    The Receiving Party agrees not to use any Confidential Information disclosed to it by the Disclosing Party for its own use or for any purpose other than to carry out discussions concerning, and the undertaking of, the Relationship. Receiving Party shall not disclose or permit disclosure of the Disclosing Party's Confidential Information to third parties. Receiving Party agrees that it shall take all reasonable measures to protect the secrecy of and avoid disclosure or use of Confidential Information of the Disclosing Party in order to prevent it from falling into the public domain or the possession of persons other than those persons authorized under this Agreement to have any such information. Such measures shall include, but not be limited to, the highest degree of care that the Receiving Party utilizes to protect its own Confidential Information of a similar nature, which shall be no less than reasonable care. Receiving Party agrees to notify the Disclosing Party in writing of any actual or suspected misuse, misappropriation or unauthorized disclosure of Confidential Information of the Disclosing Party that may come to the Receiving Party's attention.

  b.    Exceptions. Notwithstanding the above, Receiving Party shall not have liability to the Disclosing Party with regard to any Confidential Information of the Disclosing Party that:

    (1) was in the public domain at the time it was disclosed or has entered the public domain through no fault of the receiving party;

(2) was known to the Receiving Party, without restriction, at the time of disclosure, as demonstrated by files in existence at the time of disclosure;

(3) is disclosed with the prior written approval of the Disclosing Party; or

(4) is required to be disclosed by a duly issued subpoena or court order, provided that the Receiving Party notifies the Disclosing Party of such subpoena or court order sufficiently in advance of the disclosure to allow the Disclosing Party to seek a protective order limiting or preventing the disclosure.

4.    **Non-Circumvention.**  In the event that either party completes a transaction contemplated herein with one or more third parties (including but not limited to all affiliate and/or controlled parties - 50% or more common ownership and/or new ownership through part or whole acquisition, successor or effective management control - of such third parties) introduced to the Receiving Party by the Disclosing Party at any time.of the date of this agreement without prior written consent of the Disclosing Party, then the Receiving Party hereby agrees to pay the Disclosing Party a fee equal to fifty percent (50%) of the gross value of all such transactions as liquidated damages ("Circumvention Fee"). The Circumvention Fee will be paid for each and every transaction carried on by the Receiving Party, including subsequent, follow-up, repeat, extended or re-negotiated transactions.

5.    **Return of Materials.** Any materials or documents that have been furnished by the Disclosing Party to the Receiving Party in connection with the Relationship shall be promptly returned by the Receiving Party, accompanied by all copies of such documentation, within ten (10) days after written request by the Disclosing Party.

6.    **No Rights Granted.** Nothing in this Agreement shall be construed as granting any rights under any patent, copyright, trademarks or other intellectual property right of the Disclosing Party, nor shall this Agreement grant the Receiving Party any rights in or to the Disclosing Party's Confidential Information other than the limited right to review such Confidential Information solely for the purpose of determining whether to enter into the Relationship.

7.    **Successors and Assigns.** The terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective successors and assigns of the parties, provided that Confidential Information of the Disclosing Party may not be assigned without the prior written consent of the Disclosing Party. Failure to enforce any provision of this agreement by the Disclosing Party shall not constitute a waiver of any term hereof.

8.    **Severability.** If one or more provisions of this Agreement are held to be unenforceable under applicable law, the parties agree to renegotiate such provision in good faith. In the event that the parties cannot reach a mutually agreeable and enforceable replacement for such provision, then (a) such provision shall be excluded from this Agreement, (b) the balance of the Agreement shall be interpreted as if such provision were so excluded and (c) the balance of the Agreement shall be enforceable in accordance with its terms.

9.    **No Implied Obligation.** Nothing contained in this Agreement shall be construed to constitute an employment or consulting relationship between the Disclosing Party and Receiving Party, nor a relationship as partners, joint venturers, co-owners or otherwise as participants in a joint or common undertaking.

2

10.     **Governing Law.** This Agreement and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of Washington, and shall be binding upon the parties to this Agreement in the United States and worldwide.

11.     **Remedies.** The Receiving Party agrees that its obligations set forth in this Agreement are necessary and reasonable in order to protect the Disclosing Party and its business. The Receiving Party expressly agrees that due to the unique nature of the Disclosing Party's Confidential Information, monetary damages would be inadequate to compensate the Disclosing Party for any breach by the Receiving Party of its covenants and agreements set forth in this Agreement. Accordingly, the Receiving Party agrees and acknowledges that any such violation or threatened violation shall cause irreparable injury to the Disclosing Party and that, in addition to any other remedies that may be available, in law, in equity or otherwise, the Disclosing Party shall be entitled to obtain injunctive relief against the threatened breach of this Agreement or the continuation of any such breach by the Receiving Party, without the necessity of proving actual damages.

12.     **Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument.

13.     **Entire Agreement.** This Agreement is the product of both of the parties hereto, and constitutes the entire agreement between such parties pertaining to the subject matter hereof, and merges all prior negotiations and drafts of the parties with regard to the transactions contemplated herein. Any and all other written or oral agreements existing between the parties hereto regarding such transactions are expressly canceled.

14.     **No Publicity.** Neither the Disclosing Party nor Receiving Party shall, without the prior consent of the other party, disclose to any other person the fact that Confidential Information of the Disclosing Party has been, or may be, disclosed under this Agreement, that discussions or negotiations are taking place between the Disclosing Party and Receiving Party, or any of the terms, conditions, status or other facts with respect thereto, except as required by law and then only with prior notice as soon as possible to the other party.

The parties have executed this Nondisclosure Agreement as of the date first above written.

TAI FOONG USA INC.

By: _____

Name: Davy Lam

Title:  President / CEO

CAUTRE EXPORT GOODS PROCESSING JOINT STOCK CO.

By: _____

Name: Tran Thi Hoa Binh

Title:  CEO

# EXHIBIT B

# 사 업 보 고 서

## (제 17 기)

사업연도    2023년 01월 01일    부터
            2023년 12월 31일    까지

금융위원회
한국거래소 귀중                                    2024년    03월    19일

제출대상법인 유형 :        주권상장법인
면제사유발생 :              해당사항 없음
회　사　명 :                씨제이제일제당 주식회사
대　표　이　사 :            손경식, 최은석
본　점　소　재　지 :        서울특별시 중구 동호로 330 CJ제일제당센터
                          (전　화) 02) 6740-1114
                          (홈페이지) http://www.cj.co.kr
작　성　책　임　자 :        (직　책) 재경실장        (성　명) 천기성
                          (전　화) 02) 6740-1114

# 【 대표이사 등의 확인 】

## 대표이사 등의 확인 · 서명

### 확 인 서

우리는 당사의 대표이사 및 신고업무담당이사로서 이 보고서의 기재내용에 대해 상당한 주의를 다하여 직접 확인 · 검토한 결과, 중요한 기재사항의 기재 또는 표시의 누락이나 허위의 기재 또는 표시가 없고, 이 보고서에 표시된 기재 또는 표시사항을 이용하는 자의 중대한 오해를 유발하는 내용이 기재 또는 표시되지 아니하였음을 확인합니다.

또한, 당사는 「주식회사 등의 외부감사에 관한 법률」 제8조의 규정에 따라 내부회계관리제도를 마련하여 운영하고 있음을 확인합니다.

2024년  03월  19일

씨제이제일제당 주식회사

대표이사      최은석      (서명)

신고업무담당이사      천기성      (서명)

# 사. 조건부자본증권 미상환 잔액
## (1) 별도 기준

(기준일 :    2023년 12월 31일    )                                                      (단위 : 백만원)

| 잔여만기 | | 1년 이하 | 1년초과 2년이하 | 2년초과 3년이하 | 3년초과 4년이하 | 4년초과 5년이하 | 5년초과 10년이하 | 10년초과 20년이하 | 20년초과 30년이하 | 30년초과 | 합 계 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 미상환 잔액 | 공모 | – | – | – | – | – | – | – | – | – | – |
| | 사모 | – | – | – | – | – | – | – | – | – | – |
| | 합계 | – | – | – | – | – | – | – | – | – | – |

## (2) 연결 기준

(기준일 :    2023년 12월 31일 )                                                      (단위 : 백만원)

| 잔여만기 | | 1년 이하 | 1년초과 2년이하 | 2년초과 3년이하 | 3년초과 4년이하 | 4년초과 5년이하 | 5년초과 10년이하 | 10년초과 20년이하 | 20년초과 30년이하 | 30년초과 | 합 계 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 미상환 잔액 | 공모 | – | – | – | – | – | – | – | – | – | – |
| | 사모 | – | – | – | – | – | – | – | – | – | – |
| | 합계 | – | – | – | – | – | – | – | – | – | – |

# 아. 신종자본차입의 실행
당사 종속회사의 신종자본증권 발행내역 및 주요 발행조건은 다음과 같습니다.

[CJ CAU TRE FOODS JOINT STOCK COMPANY]

| 구분 | | 발행 조건의 내용 |
|---|---|---|
| 차입일 | | 2019년 09월 30일 |
| 차입금액 | | KRW 100,000,000,000 |
| 차입목적 | | 기존 차입금 상환 |
| 차입방법 | | 사모 |
| 상장여부 | | 비상장 |
| 미상환잔액 | | KRW 100,000,000,000 |
| 자본인정에 관한사항 | 회계처리 근거 | 상기 신종자본차입의 원금 및 이자에 대하여 당사는 계약상의 지급의무를 부담하지 않으며, 이에 따라 당사는 자본으로 분류 |
| 미지급 누적이자 | | – |
| 만기 및 조기상환 가능일 | | 만기일 : 2049년 09월 30일(차주의 권리로 연장 가능) 발행일로부터 5년이 경과된 2024년 09월 30일과 그 이후 각 이자지급일에 조기상환 가능 |
| 발행금리 | | - 발행일(당일 포함)로부터 2024년 09월 30일까지 기간에 대해서는 연 3.58%의 고정금리 - 이 후(x) 각 재설정일의 2영업일 전에 발표하는 5년 만기국고채 수익률과, (y) 연 2.28%의 가산 금리를 합산한 금리에, (z) 연0.99%의 Step-up 마진을 가산한 고정금리 |
| 우선순위 | | - 청산절차에서 차주의 보통주식 및 우선주식보다 선순위 - 기타 대출채권과 동순위임이 명시된 채권을 제외한 나머지 채권들에 대하여는 후순위 |

| 부채분류 시 재무구조에 미치는 영향 | 부채비율 상승(CJ제일제당(주) 2023년 12월말 연결재무제표 기준 151.3%에서 153.5%로 상승) |
| 기타 중요한 발행조건 등 | – |

당사의 종속회사인 CJ CAU TRE FOODS JOINT STOCK COMPANY은 2019년 9월 30일 권면총액 100,000백만원의 신종자본증권차입을 실행하였습니다. 차입자의 조기상환청구권이 부여된 동 신종자본차입의 이자율은 3.58%이며, 만기는 2049년 9월 30일입니다.

상기 신종자본차입의 원금 및 이자에 대하여 당사는 계약상의 지급의무를 부담하지 않으며, 이에 따라 당사는 자본으로 분류하였습니다. 한편, 상기의 신종자본차입에 대하여 당사는 종속회사에 대한 지급보증을 제공하고 있습니다.

[CJ CHINA, LTD.]

| 구분 | | 발행 조건의 내용 |
|---|---|---|
| 차입일 | | 2019년 12월 03일 |
| 차입금액 | | KRW 200,000,000,000 |
| 차입목적 | | 관계사 대여 |
| 차입방법 | | 사모 |
| 상장여부 | | 비상장 |
| 미상환잔액 | | KRW 200,000,000,000 |
| 자본인정에 관한사항 | 회계처리 근거 | 상기 신종자본차입의 원금 및 이자에 대하여 당사는 계약상의 지급의무를 부담하지 않으며, 이에 따라 당사는 자본으로 분류 |
| 미지급 누적이자 | | – |
| 만기 및 조기상환 가능일 | | 만기일 : 2049년 12월 03일(차주의 권리로 연장 가능) 발행일로부터 5년이 경과된 2024년 12월 03일과 그 이후 각 이자지급일에 조기상환 가능 |
| 발행금리 | | – 발행일(당일 포함)로부터 2024년 12월 03일까지 기간에 대해서는 연 3.48%의 고정금리 <br> – 이 후에(x) 각 재설정일의 2영업일 전에 발표하는 5년 만기국고채 수익률과, <br> (y) 연 1.87%의 가산 금리를 합산한 금리에, (z) 연0.99%의 Step-up 마진을 가산한 고정금리 |
| 우선순위 | | – 청산절차에서 차주의 보통주식 및 우선주식보다 선순위 <br> – 기타 대출채권과 동순위임이 명시된 채권을 제외한 나머지 채권들에 대하여는 후순위 |
| 부채분류 시 재무구조에 미치는 영향 | | 부채비율 상승(CJ제일제당(주) 2023년 12월말 연결재무제표 기준 151.3%에서 155.7%로 상승) |
| 기타 중요한 발행조건 등 | | – |

당사의 종속회사인 CJ CHINA, LTD.은 2019년 12월 3일 권면총액 200,000백만원의 신종자본증권차입을 실행하였습니다. 차입자의 조기상환청구권이 부여된 동 신종자본차입의 이자율은 3.48%이며, 만기는 2049년 12월 3일입니다.

상기 신종자본차입의 원금 및 이자에 대하여 당사는 계약상의 지급의무를 부담하지 않으며, 이에 따라 당사는 자본으로 분류하였습니다. 한편, 상기의 신종자본차입에 대하여 당사는 종속회사에 대한 지급보증을 제공하고 있습니다.

[PT CJ FEED AND CARE INDONESIA]

# X. 대주주 등과의 거래내용

## 1. 대주주 등에 대한 신용공여 등

2023년 12월 31일 현재 회사의 종속기업 등에 대한 채무보증 변동내역은 다음과 같습니다.

(단위 : 현지통화 천)

| 법인명 | 관계 | 거래내역 | | | | 통화 |
|---|---|---|---|---|---|---|
| | | 기초 | 증가 | 감소 | 기말 | |
| CJ FOODS ASIA HOLDINGS LIMITED | 계열회사 | 50,000 | – | – | 50,000 | USD |
| CJ QINGDAO FOODS CO., LTD. | 계열회사 | 13,000 | – | – | 13,000 | USD |
| | 계열회사 | 120,000 | – | – | 120,000 | CNY |
| CJ FOODS VIETNAM CO.,LTD | 계열회사 | 1,754,189,013 | – | 697,049,013 | 1,057,140,000 | VND |
| | 계열회사 | 25,000 | 10,000 | – | 35,000 | USD |
| CJ CAU TRE FOODS JOINT STOCK COMPANY | 계열회사 | 200,000,000 | – | – | 200,000,000 | VND |
| | 계열회사 | 48,500 | – | – | 48,500 | USD |
| | 계열회사 | 100,000,000 | – | – | 100,000,000 | KRW |
| CJ SCHWAN'S COMPANY | 계열회사 | 700,000 | – | 305,000 | 395,000 | USD |
| CJ FOODS MANUFACTURING BEAUMONT CORPORATION | 계열회사 | 130,000 | – | – | 130,000 | USD |
| CJ MAINFROST FOODS GMBH | 계열회사 | 14,400 | – | – | 14,400 | EUR |
| CJ RAVIOLLO RUS. LLC | 계열회사 | 1,326,000 | – | – | 1,326,000 | RUB |
| CJ FOODS JAPAN | 계열회사 | 10,590,000 | 10,100,000 | – | 20,690,000 | JPY |
| GYOZA KEIKAKU CO., LTD. | 계열회사 | 600,000 | – | 300,000 | 300,000 | JPY |
| CJ FOODS MYANMAR CO., LTD. | 계열회사 | 1,800 | – | – | 1,800 | USD |
| CJ LIAOCHENG BIOTECH CO., LTD. | 계열회사 | 542,310 | – | 192,310 | 350,000 | CNY |
| CJ(SHENYANG) BIOTECH CO., LTD. | 계열회사 | 700,000 | – | 300,000 | 400,000 | CNY |
| SHANDONG YOUTELL BIOCHEMICAL CO., LTD. | 계열회사 | 24,000 | 26,000 | – | 50,000 | CNY |
| CJ INTERNATIONAL TRADING CORP | 계열회사 | – | 200,000 | – | 200,000 | CNY |
| PT CHEILJEDANG INDONESIA | 계열회사 | 448,000 | 252,000 | – | 700,000 | USD |
| CJ BIO MALAYSIA SDN. BHD. | 계열회사 | 441,174 | 28,826 | – | 470,000 | USD |
| | 계열회사 | – | 7,000,000 | – | 7,000,000 | JPY |
| CJ BIO AMERICA INC. | 계열회사 | 313,255 | – | – | 313,255 | USD |
| CJ DO BRASIL LTDA. | 계열회사 | 50,000 | 122,000 | – | 172,000 | USD |
| | 계열회사 | 60,000 | – | 60,000 | – | BRL |
| CJ SELECTA S.A. | 계열회사 | 260,000 | 60,000 | – | 320,000 | USD |
| CJ EUROPE GMBH | 계열회사 | 94,000 | – | 4,000 | 90,000 | EUR |
| PT CHEIL JEDANG BIO INDONESIA | 계열회사 | 1,500 | 3,500 | – | 5,000 | USD |
| PT CJ FEED AND CARE INDONESIA | 계열회사 | 1,964,000,000 | 25,000,000 | – | 1,989,000,000 | IDR |
| | 계열회사 | 180,000,000 | – | – | 180,000,000 | KRW |
| | 계열회사 | – | 20,000 | – | 20,000 | USD |
| CJ SHENYANG FEED CO., LTD. | 계열회사 | 350,000 | – | – | 350,000 | CNY |
| COFEED FEEDMILL (QIQIHAER) CO., LTD. | 계열회사 | 55,000 | – | 55,000 | – | CNY |
| CJ PHILIPPINES, INC. | 계열회사 | – | 480,000 | – | 480,000 | PHP |
| CJ CHEILJEDANG FEED (CAMBODIA) CO., LTD | 계열회사 | 7,500 | 2,400 | – | 9,900 | USD |
| CJ FEED MYANMAR CO., LTD | 계열회사 | 6,700 | – | – | 6,700 | USD |
| CJ CHINA, LTD. | 계열회사 | 118,800 | 18,200 | – | 137,000 | USD |

| | | | | | |
|---|---|---:|---:|---:|---:|
| | CJ BIOMATERIALS, INC (*1)(*3) | 297,332 | 7,385,109 | 71,469 | 6,750,667 |
| | CJ CHINA, LTD.(*1) | 3,500,456 | 723,222,001 | 2,601,965 | 744,802,600 |
| | CJ SE ASIA PTE. LTD. | 7,584,380 | 973,614 | 7,620,044 | 200,206 |
| | CJ INTERNATIONAL TRADING CO., LTD.(*1) | 183,793,032 | 12,543,106 | 141,457,302 | 10,390,136 |
| | CJ CHEILJEDANG MEXICO, S.A. DE C.V.(*1) | 30,933,724 | 2,765,837 | 19,430,946 | 1,568,325 |
| | CJ FOODS VIETNAM CO., LTD. | 9,414,260 | 3,028,071 | 7,979,513 | 67,254 |
| | CJ FOODS JAPAN CORPORATION | 90,121,978 | 684,800 | 149,943,137 | 860,928 |
| | CJ FOODS USA INC.(*4) | – | – | 117,229,126 | 2,078,579 |
| | CJ MAINFROST FOODS GMBH | 12,876,675 | 47,807 | – | – |
| | SCHWAN'S COMPANY(*5) | 138,700,357 | 2,498,112 | – | – |
| | CJ BIO APAC., LTD.(*1) | 22,117,622 | 2,953,154 | – | – |
| | 기타 | 18,552,054 | 5,797,846 | 32,072,962 | 7,870,507 |
| | 소　　계 | 1,268,458,537 | 2,776,207,918 | 1,405,527,040 | 3,035,353,635 |
| 공동기업 및 관계기업 | 기타 | 535,115 | 692,857 | – | 953,481 |
| | 소　　계 | 535,115 | 692,857 | – | 953,481 |
| 기타 특수관계자 (*2) | 씨제이프레시웨이(주) | 472,021,640 | 494,262,902 | 451,394,003 | 633,060,229 |
| | 씨제이푸드빌(주) | 35,797,463 | 2,196,329 | 45,656,132 | 1,782,595 |
| | (주)씨제이이엔엠 | 22,455,016 | 5,279,799 | 22,156,214 | 7,393,775 |
| | (주)씨제이텔레닉스 | 22,065 | 13,828,561 | 49,889 | 13,425,235 |
| | (주)슈퍼레이스 | 309 | 500,000 | – | 501,000 |
| | 씨제이씨지브이(주) | 3,621,081 | 1,346,778 | 2,304,483 | 1,623,644 |
| | 씨제이올리브네트웍스(주) | 16,665,842 | 91,316,756 | 5,104,308 | 92,158,372 |
| | CJ JAPAN CORP. | 10,160,144 | 2,002,374 | 20,716,418 | 3,592,116 |
| | 씨제이올리브영(주) | 17,137,830 | 196,121 | 14,976,678 | 198,107 |
| | 에스지생활안전 | – | 413,195 | – | 378,014 |
| | 기타 | 5,845,350 | 16,129,843 | 4,791,156 | 14,907,950 |
| | 소　　계 | 583,726,740 | 627,472,658 | 567,149,281 | 769,021,037 |
| 합　　계 | | 1,855,663,358 | 3,445,607,776 | 1,975,154,047 | 3,869,575,331 |

(*1) 회사는 해외생산종속기업으로부터 재화를 구매하여, 해외판매종속 및 관계기업을 통해 최종 고객에게 재화를 판매하는 중계무역 거래를 하고 있습니다. 이 중 재화의 매출에 대한 외형상 직접적인 거래상대방은 해외판매종속 및 관계기업임에 따라 매출금액은 최종고객이 아닌 해외판매종속 및 관계기업에 대한 매출액으로 기재하였습니다.

(*2) 제1024호 특수관계자 범위에 포함되지 않으나 독점규제 및 공정거래법에 따른 동일한 대규모기업집단 소속회사가 포함되어 있습니다.

(*3) 전기 중 CJ RESEARCH CENTER, INC.는 CJ BIOMATERIALS, INC로 사명을 변경하였습니다.

(*4) 당기 중 SCHWAN'S COMPANY의 종속기업으로 편입되었습니다.

(*5) SCHWAN'S COMPANY의 연결 기준 금액으로, CJ FOODS USA INC.등 종속기업에 대한 매출·매입내역이 포함되어 있습니다.

(*6) 회사가 당기 중 삼해상사(주)로부터 영업양수도한 1,083백만원이 포함되어 있습니다.

# ANNUAL REPORT

(17th Fiscal Year)

Fiscal Year     From     January 1, 2023
                To       December 31, 2023

Financial Services Commission

To:  Korean Exchange

March 19, 2024

| | |
|---|---|
| Type of Filing Entity: | Listed Stock Corporation |
| Occurrence of Grounds for Exemption: | Not Applicable |
| Company Name: | CJ CheilJedang Corporation |
| Chief Executive Officer (CEO): | Sohn Kyung-shik, Choi Eun-seok |
| Head Office Address: | 330, Dongho-ro, Jung-gu, Seoul |
| | CJ CheilJedang Center |
| | Phone:  (02) 6740-1114 |
| | Website:  http://www.cj.co.kr |
| Person in Charge of Preparation: | Title:  Finance & Accounting Director |
| | Name:  Chun Gi-sung |
| | Phone:  (02) 6740-1114 |

# [CONFIRMATION BY THE CHIEF EXECUTIVE OFFICER AND OTHERS]

Confirmation and Signature of the Chief Executive Officer and Others

Certificate of Confirmation

We, as the Chief Executive Director and the Director in Charge of Regulatory Filings of the Company, hereby confirm that we have exercised significant due care in directly reviewing and verifying the contents of this report.  As a result of such review, we confirm that there are no omissions or false statements with respect to any material matters contained or indicated herein, and that no information has been stated or indicated that would cause any material misunderstanding by users of the information disclosed in this report.

We further confirm that, pursuant to Article 8 of the Act on External Audit of Stock Companies, the Company has established and is operating an internal accounting control system.

March 19, 2024

CJ CheilJedang Corporation

Chief Executive Director          Choi Eun-seok          (Signature)

Director in Charge of Regulatory Filings          Chun Gi-sung          (Signature)

## G. Outstanding Balance of Contingent Capital Securities
(1) Separate Basis

(As of December 31, 2023)                                        (Unit: KRW million)

| Residual Maturity | | 1 year or less | over 1 year up to 2 years | over 2 year up to 3 years | over 3 year up to 4years | over 4 yr up to 5 yrs | over 5 yr up to 6 yrs | over 10 yrs up to 20 yrs | over 20 yrs up to 30 yrs | over 30 years | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Outstanding Balance | Public Offering | - | - | - | - | - | - | - | - | - | - |
| | Private Placement | - | - | - | - | - | - | - | - | - | - |
| | Total | - | - | - | - | - | - | - | - | - | - |

(2) Consolidated Basis

(As of December 31, 2023)                                        (Unit: KRW million)

| Residual Maturity | | 1 year or less | over 1 year up to 2 years | over 2 year up to 3 years | over 3 year up to 4years | over 4 yr up to 5 yrs | over 5 yr up to 6 yrs | over 10 yrs up to 20 yrs | over 20 yrs up to 30 yrs | over 30 years | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Outstanding Balance | Public Offering | - | - | - | - | - | - | - | - | - | - |
| | Private Placement | - | - | - | - | - | - | - | - | - | - |
| | Total | - | - | - | - | - | - | - | - | - | - |

## H. Execution of Hybrid Capital Borrowings
The details of issuance and principal terms of hybrid capital securities issued by the Company's subsidiary are as follows.

### [CJ CAU TRE FOODS JOINT STOCK COMPANY]

| CATEGORY | | DETAILS OF ISSUANCE TERMS |
|---|---|---|
| Date of Borrowing | | September 30, 2019 |
| Amount Borrowed | | KRW 100,000,000,000 |
| Purpose of Borrowing | | Repayment of Existing Loans |
| Method of Borrowing | | Private Placement |
| Listing Status | | Unlisted |
| Outstanding Balance | | KRW 100,000,000,000 |
| Capital Recognition Details | Accounting Basis | The Company does not bear any contractual obligation to pay the principal and interest of the above hybrid capital borrowings. Therefore, such borrowings are classified as equity. |
| Accumulated Unpaid Interest | | - |
| Maturity and Early Redemption Date | | Maturity Date:  September 30, 2049 (extendable at the borrower's option) Early redemption is available on September 30, 2024, which is the date falling 5 years after the issuance date, and on each interest payment date thereafter. |
| Issuance Interest Rate | | • A fixed interest rate of 3.58% per annum for the period from (and including) the issuance date to September 30, 2024 • Thereafter, a fixed interest rate equal to (i) the yield on 5-year Korean Treasury Bonds announced two business days prior to each reset date, plus (ii) a margin of 2.28% per annum, plus (iii) a step-up margin of 0.99% per annum. |

| Priority | • Senior to the borrower's common stock and preferred stock in liquidation<br>• Except for debts that are expressly stated to rank pari passu with other loan receivables, the securities are subordinated to all remaining debts. |
|---|---|
| Impact on Financial Structure upon Liability Classification | Increase in the debt-to-equity ratio (CJ CheilJedang Corporation debt ratio increased from 151.3% to 153.5% on a consolidated financial statement basis as of the end of December, 2023.) |
| Other Key Issuance Terms, etc. | |

The Company's subsidiary CJ CAU TRE FOODS JOINT STOCK COMPANY executed a hybrid capital borrowing in the total principal amount of KRW 100,000 million on September 30, 2019. The said hybrid capital borrowing, which is subject to the borrower's early redemption option, bears interest at 3.58% per annum, and matures on September 30, 2049.

The Company has no contractual obligation to pay the principal and interest of the above hybrid capital borrowing, and accordingly, the Company has classified it as equity. Meanwhile, the Company has provided a payment guarantee for its subsidiary in respect to the said hybrid capital borrowing.

[CJ CHINA, LTD.]

| CATEGORY | | DETAILS OF ISSUANCE TERMS |
|---|---|---|
| Date of Borrowing | | December 3, 2019 |
| Amount Borrowed | | KRW 200,000,000,000 |
| Purpose of Borrowing | | Loans to Related Parties |
| Method of Borrowing | | Private Placement |
| Listing Status | | Unlisted |
| Outstanding Balance | | KRW 200,000,000,000 |
| Capital Recognition Details | Accounting Basis | The Company does not bear any contractual obligation to pay the principal and interest of the above hybrid capital borrowings. Therefore, such borrowings are classified as equity. |
| Accumulated Unpaid Interest | | |
| Maturity and Early Redemption Date | | Maturity Date: December 3, 2049 (extendable at the borrower's option)<br>Early redemption is available on December 3, 2024, which is the date falling 5 years after the issuance date, and on each interest payment date thereafter. |
| Issuance Interest Rate | | • A fixed interest rate of 3.48% per annum shall apply for the period from (and including) the issuance date to December 3, 2024<br>• Thereafter, a fixed interest rate equal to (i) the yield on 5-year Korean Treasury Bonds announced two business days prior to each reset date, plus (ii) a margin of 1.87% per annum, plus (iii) a step-up margin of 0.99% per annum will apply. |
| Priority | | • Senior to the borrower's common stock and preferred stock in liquidation<br>• Except for debts that are expressly stated to rank pari passu with other loan receivables, the securities are subordinated to all remaining debts. |
| Impact on Financial Structure upon Liability Classification | | Increase in the debt-to-equity ratio (CJ CheilJedang Corporation debt ratio increased from 151.3% to 155.7% on a consolidated financial statement basis as of the end of December, 2023. |
| Other Key Issuance Terms, etc. | | |

The Company's subsidiary CJ CHINA, LTD executed a hybrid capital borrowing in the total principal amount of KRW 200,000 million on December 3, 2019. The said hybrid capital borrowing, which is subject to the borrower's early redemption option, bears interest at 3.48% per annum, and matures on December 3, 2049.

The Company has no contractual obligation to pay the principal and interest of the above hybrid capital borrowing, and accordingly, the Company has classified it as equity. Meanwhile, the Company has provided a payment guarantee for its subsidiary in respect to the said hybrid capital borrowing.

[PT CJ FEED AND CARE INDONESIA]

# X.  Transaction Details with Major Shareholders and Related Parties

1.  Credit Extensions to Major Shareholders and Related Parties, etc.

As of December 31, 2023, the changes in debt guarantees provided to the Company's subsidiaries and related entities are as follows.

(Unit: Local Currency in thousands)

| Corporate Name | Affiliation | Details of Transaction | | | | Currency |
|---|---|---|---|---|---|---|
| | | Beginning Balance | Increase | Decrease | Ending Balance | |
| CJ FOODS ASIA HOLDINGS LIMITED | Affiliate | 50,000 | - | - | 50,000 | USD |
| CJ QINGDAO FOODS CO., LTD | Affiliate | 13,000 | - | - | 13,000 | USD |
| | Affiliate | 120,000 | - | - | 120,000 | CNY |
| CJ FOODS VIETNAM CO., LTD | Affiliate | 1,754,189,013 | - | 697,049,013 | 1,057,140,000 | VND |
| | Affiliate | 25,000 | 10,000 | - | 35,000 | USD |
| CJ CAU TRE FOODS JOINT STOCK COMPANY | Affiliate | 200,000,000 | - | - | 200,000,000 | VND |
| | Affiliate | 48,500 | - | - | 48,500 | USD |
| | Affiliate | 100,000,000 | - | - | 100,000,000 | KRW |
| CJ SCHWAN'S COMPANY | Affiliate | 700,000 | - | 305,000 | 395,000 | USD |
| CJ FOODS MANUFACTURING BEAUMONT CORPORATION | Affiliate | 130,000 | - | - | 130,000 | USD |
| CJ MAINFROST FOOD GMBH | Affiliate | 14,400 | - | - | 14,400 | EUR |
| CJ RAVIOLLO RUS. LLC | Affiliate | 1,326,000 | - | - | 1,326,000 | RUB |
| CJ FOODS JAPAN | Affiliate | 10,590,000 | 10,100,000 | - | 20,690,000 | JPY |
| GYOZA KEIKAKU CO., LTD | Affiliate | 600,000 | - | 300,000 | 300,000 | JPY |
| CJ FOODS MYANMAR CO., LTD | Affiliate | 1,800 | - | - | 1,800 | USD |
| CJ LIAOCHENG BIOTECH CO., LTD | Affiliate | 542,310 | - | 192,310 | 350,000 | CNY |
| CJ (SHENYANG) BIOTECH CO., LTD | Affiliate | 700,000 | - | 300,000 | 400,000 | CNY |
| SHANDONG YOUTELL BIOTECH CO. LTD | Affiliate | 24,000 | 26,000 | - | 50,000 | CNY |
| CJ INTERNATIONAL TRADING CORP | Affiliate | - | 200,000 | - | 200,000 | CNY |
| PT CHEILJEDANG INDONESIA | Affiliate | 448,000 | 252,000 | - | 700,000 | USD |
| CJ BIO MALASIA SDN. BHD | Affiliate | 441,174 | 28,826 | - | 470,000 | USD |
| | Affiliate | - | 7,000,000 | - | 7,000,000 | JPY |
| CJ BIO AMERICA INC. | Affiliate | 313,255 | - | - | 313,255 | USD |
| CJ DO BRASIL LTDA. | Affiliate | 50,000 | 122,000 | - | 172,000 | USD |
| | Affiliate | 60,000 | - | 60,000 | - | BRL |
| CJ SELECTA S.A. | Affiliate | 260,000 | 60,000 | - | 320,000 | USD |
| CJ EUROPE GMBH | Affiliate | 94,000 | - | 4,000 | 90,000 | EUR |
| PT CHEIL JEDANG BIO INDONESIA | Affiliate | 1,500 | 3,500 | - | 5,000 | USD |
| PT CJ FEED AND CARE INDONESIA | Affiliate | 1,964,000,000 | 25,000,000 | - | 1,989,000,000 | IDR |
| | Affiliate | 180,000,000 | - | - | 180,000,000 | KRW |
| | Affiliate | - | 20,000 | - | 20,000 | USD |
| CJ SHENYANG FEED CO., LTD | Affiliate | 350,000 | - | - | 350,000 | CNY |
| COFEED FEEDMILL (QIQIHAER) CO., LTD | Affiliate | 55,000 | - | 55,000 | - | CNY |
| CJ PHILIPPINES, INC. | Affiliate | - | 480,000 | - | 480,000 | PHP |
| CJ CHEILDEJANG FEED (CAMBODIA) CO., LTD | Affiliate | 7,500 | 2,400 | - | 9,900 | USD |
| CJ FEED MYANMAR CO., LTD | Affiliate | 6,700 | - | - | 6,700 | USD |
| CJ CHINA, LTD | Affiliate | 118,800 | 18,200 | - | 137,000 | USD |

| | | | | | |
|---|---|---|---|---|---|
| | CJ BIOMATERIALS, INC (*1)(*3) | 297,332 | 7,385,109 | 71,469 | 6,750,667 |
| | CJ CHINA, LTD.(*1) | 3,500,456 | 723,222,001 | 2,601,965 | 744,802,600 |
| | CJ SE ASIA PTE. LTD. | 7,584,380 | 973,614 | 7,620,044 | 200,206 |
| | CJ INTERNATIONAL TRADING CO., LTD.(*1) | 183,793,032 | 12,543,106 | 141,457,302 | 10,390,136 |
| | CJ CHEILJEDANG MEXICO, S.A. DE C.V.(*1) | 30,933,724 | 2,765,837 | 19,430,946 | 1,568,325 |
| | CJ FOODS VIETNAM CO., LTD. | 9,414,260 | 3,028,071 | 7,979,513 | 67,254 |
| | CJ FOODS JAPAN CORPORATION | 90,121,978 | 684,800 | 149,943,137 | 860,928 |
| | CJ FOODS USA INC.(*4) | - | - | 117,229,126 | 2,078,579 |
| | CJ MAINFROST FOODS GMBH | 12,876,675 | 47,807 | - | - |
| | SCHWAN'S COMPANY(*5) | 138,700,357 | 2,498,112 | - | - |
| | CJ BIO APAC., LTD.(*1) | 22,117,622 | 2,953,154 | - | - |
| | OTHER | 18,552,054 | 5,797,846 | 32,072,962 | 7,870,507 |
| | SUBTOTAL | 1,268,458,537 | 2,776,207,918 | 1,405,527,040 | 3,035,353,635 |
| Joint Ventures and Associates | OTHER | 535,115 | 692,857 | - | 953,481 |
| | SUBTOTAL | 535,115 | 692,857 | - | 953,481 |
| Other Related Parties (*2) | CJ FRESHWAY CO., LTD. | 472,021,640 | 494,262,902 | 451,394,003 | 633,060,229 |
| | CJ FOODVILLE CO., LTD. | 35,797,463 | 2,196,329 | 45,656,132 | 1,782,595 |
| | CJ ENM CO.,LTD. | 22,455,016 | 5,279,799 | 22,156,214 | 7,393,775 |
| | CJ TELENIX CO. ,LTD. | 2 2,065 | 13,828,561 | 49,889 | 13,425,235 |
| | CJ SUPERRACE CO., LTD. | 309 | 500,000 | - | 501,000 |
| | CJ CGV CO., LTD. | 3,621,081 | 1,346,778 | 2,304,483 | 1,623,644 |
| | CJ OLIVENETWORKS, CO., LTD. | 16,665,842 | 91,316,756 | 5,104,308 | 92,158,372 |
| | CJ JAPAN CORP. | 10,160,144 | 2,002,374 | 20,716,418 | 3,592,116 |
| | CJ OLIVE YOUNG CORPORATION | 17,137,830 | 196,121 | 14,976,678 | 198,107 |
| | SG SAFETY CORPORATION | - | 413,195 | - | 378,014 |
| | OTHER | 5,845,350 | 16,129,843 | 4,791,156 | 14,907,950 |
| | SUBTOTAL | 583,726,740 | 627,472,658 | 567,149,281 | 769,021,037 |
| | TOTAL | 1,855,663,358 | 3,445,607,776 | 1,975,154,047 | 3,869,575,331 |

*(1) The Company purchases goods from its overseas manufacturing subsidiaries and conducts intermediary trade transactions by selling the goods to end customers through its overseas sales subsidiaries and associates.  In respect of sales of goods, the nominal contractual counterparties are the overseas sales subsidiaries and associates. Therefore, the sales amounts are presented as sales to such overseas sales subsidiaries and associates, rather than to end customers.

*(2) Although they are not included in the scope of Related Parties under Category 1024, companies belonging to the same large enterprise group pursuant to the Monopoly Regulation and Fair Trade Act are included.

*(3) During the prior period, CJ RESEARCH CENTER, INC. changed its corporate name to CJ BIOMATERIALS, INC.

*(4) It became a subsidiary of the SCHWAN'S COMPANY during the current period.

*(5) The amounts are based on SCHWAN'S COMPANY's consolidated figures and include sales and purchases with subsidiaries such as CJ FOODS USA INC.

*(6) The amount of KRW 1,083 million acquired from Samhae Commercial Co., Ltd. through a business transfer during the current period is included.

**CERTIFICATION OF COURT CERTIFIED INTERPRETER**

I, Grace Yoon Yi, certify that I am a Washington state court certified interpreter. I am certified to interpret from English to Korean, and Korean to English, by the Supreme Court of Washington, AOC Certification Number 10791.  I certify that I have translated the above document, Annual Report – 17th Fiscal Year (6 pages), from Korean to English to the best of my ability. I further certify, to the best of my belief, that this is a true and accurate translation.

*/s/  Grace Yoon Yi*

_____
Grace Yoon Yi
Washington State Court Certified Interpreter, AOC #10791

# EXHIBIT C

# Annual Report

(제 18 기)

Fiscal year　　　　　2024.01.01　　　From
　　　　　　　　　　2024.12.31　　　To

금융위원회
한국거래소 귀중　　　　　　　　　　　　　　　　　2025년　　3월　　17일

Type of entity subject to
submission:　　　　　　　Stock-listed corporations

Occurrence of reasons for
relief:　　　　　　　　　N/A

회　　사　　명 :　　　　씨제이제일제당 주식회사
대 표 이 사 :　　　　　손경식, 강신호
본 점 소 재 지 :　　　　서울특별시 중구 동호로 330 CJ제일제당센터
　　　　　　　　　　　(전　화) 02) 6740 -1114
　　　　　　　　　　　(홈페이지) http://www.cj.co.kr
작 성 책 임 자 :　　　　(직　책) 재경실장　　　　(성　명) 천기성
　　　　　　　　　　　(전　화) 02) 6740-1114

# 【Confirmation by CEO, etc.】

대표이사 등의 확인·서명

## 확 인 서

우리는 당사의 대표이사 및 신고업무담당이사로서 이 보고서의 기재내용에 대해 상당한 주의를 다하여 직접 확인·검토한 결과, 중요한 기재사항의 기재 또는 표시의 누락이나 허위의 기재 또는 표시가 없고, 이 보고서에 표시된 기재 또는 표시사항을 이용하는 자의 중대한 오해를 유발하는 내용이 기재 또는 표시되지 아니하였음을 확인합니다.

또한, 당사는 「주식회사 등의 외부감사에 관한 법률」 제8조의 규정에 따라 내부회계관리제도를 마련하여 운영하고 있음을 확인합니다.

2025년  03월  17일

씨제이제일제당 주식회사

대표이사      강신호      (서명)

신고업무담당이사      천기성      (서명) 천기성

| balance | Private placement | – | – | – | – | – | – | – | – | – |
| | Total | – | – | – | – | – | – | – | – | – |

## (2) 연결 기준

(기준일 :     2024년 12월 31일 )                                                              (단위 : 백만원)

| 잔여만기 | | 1년 이하 | 1년초과 2년이하 | 2년초과 3년이하 | 3년초과 4년이하 | 4년초과 5년이하 | 5년초과 10년이하 | 10년초과 20년이하 | 20년초과 30년이하 | 30년초과 | 합 계 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 미상환 잔액 | 공모 | – | – | – | – | – | – | – | – | – | – |
| | 사모 | – | – | – | – | – | – | – | – | – | – |
| | 합계 | – | – | – | – | – | – | – | – | – | – |

# 아. 신종자본차입의 실행

당사 종속회사의 신종자본증권 발행내역 및 주요 발행조건은 다음과 같습니다.

[CJ CAU TRE FOODS JOINT STOCK COMPANY]

| 구분 | | 발행 조건의 내용 |
|---|---|---|
| 발행일 | | 2024년 09월 30일 |
| 발행금액 | | KRW 100,000,000,000 |
| 발행목적 | | 기존 신종자본증권 상환 |
| 발행방법 | | 사모 |
| 상장여부 | | 비상장 |
| 미상환잔액 | | KRW 100,000,000,000 |
| 자본인정에 관한사항 | 회계처리 근거 | 상기 신종자본차입의 원금 및 이자에 대하여 당사는 계약상의 지급의무를 부담하지 않으며, 이에 따라 당사는 자본으로 분류 |
| | 신용평가기관의 자본인정비율 등 | – |
| 미지급 누적이자 | | – |
| 만기 및 조기상환 가능일 | | 만기일 : 2054년 09월 30일(차주의 권리로 연장 가능) 발행일로부터 5년이 경과된 2029년 09월 28일과 그 이후 각 이자지급일에 조기상환 가능 |
| 발행금리 | | - 발행일(당일 포함)로부터 2029년 09월 28일까지 기간에 대해서는 연 4.55%의 고정금리<br>- 이후(x) 각 재설정일의 2영업일 전에 발표하는 5년 만기국고채 수익률과,<br>  (y) 연 1.67%의 가산 금리를 합산한 금리에, (z) 연0.99%의 Step-up 마진을 가산한 고정금리 |
| 우선순위 | | - 청산절차에서 차주의 보통주식 및 우선주식보다 선순위<br>- 기타 대출채권과 동순위임이 명시된 채권을 제외한 나머지 채권들에 대하여는 후순위 |
| 부채분류 시 재무구조에 미치는 영향 | | 부채비율 상승(CJ제일제당(주) 2024년 12월말 연결재무제표 기준 146.3%에서 148.3%로 상승) |
| 기타 중요한 발행조건 등 | | – |

# X. Details of Transactions with Major Shareholders, etc.

## 1. 대주주 등에 대한 신용공여 등

2024년 12월 31일 현재 회사의 종속기업 등에 대한 채무보증 변동내역은 다음과 같습니다.

**[지급보증]**

(단위 : 현지통화 천)

| 법인명 | 관계 | 내용 | 목적 | 채권자 | 보증기간 | | 거래내역 | | | | 통화 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | 시작일 | 만기일 | 기초 | 증가 | 감소 | 기말 | |
| CJ FOODS ASIA HOLDINGS LIMITED | 계열회사 | 지급보증 | 운영자금 | – | | | 50,000 | – | 50,000 | – | USD |
| CJ QINGDAO FOODS CO., LTD. | 계열회사 | 지급보증 | 운영자금 | BOA 외 1 | 2024.01.17 | 2025.12.31 | 13,000 | – | | 13,000 | USD |
| | | | | | | | 120,000 | – | – | 120,000 | CNY |
| CJ FOODS VIETNAM CO.,LTD | 계열회사 | 지급보증 | 운영자금 | HSBC 외 6 | 2024.03.03 | 2025.12.22 | 1,057,140,000 | – | 139,140,000 | 918,000,000 | VND |
| | | | | | | | 35,000 | 10,500 | – | 45,500 | USD |
| CJ CAU TRE FOODS JOINT STOCK COMPANY | 계열회사 | 지급보증 | 운영자금 | DBS 외 1 | 2024.07.30 | 2054.09.30 | 200,000,000 | 216,400,000 | – | 416,400,000 | VND |
| | | | | | | | 48,500 | – | 8,500 | 40,000 | USD |
| | | | | | | | 100,000,000 | – | – | 100,000,000 | KRW |
| SCHWAN'S COMPANY | 계열회사 | 지급보증 | 운영자금 | MIZUHO | 2022.11.29 | 2025.11.29 | 395,000 | – | 100,000 | 295,000 | USD |
| CJ FOODS MANUFACTURING BEAUMONT LLC | 계열회사 | 지급보증 | 운영자금 | KB국민은행 | 2024.10.25 | 2027.10.25 | 130,000 | – | – | 130,000 | USD |
| CJ MAINFROST FOODS GMBH | 계열회사 | 지급보증 | 운영자금 | 우리은행 외 1 | 2024.09.30 | 2025.09.30 | 14,400 | – | 2,400 | 12,000 | EUR |
| CJ RAVIOLLO RUS. LLC | 계열회사 | 지급보증 | 운영자금 | KEB하나은행 | 2024.05.23 | 2025.05.23 | 1,326,000 | 102,000 | – | 1,428,000 | RUB |
| CJ FOODS JAPAN | 계열회사 | 지급보증 | 운영자금 | MIZUHO 외 3 | 2023.09.14 | 2028.09.14 | 20,690,000 | – | 190,000 | 20,500,000 | JPY |
| GYOZA KEIKAKU CO., LTD. | 계열회사 | 지급보증 | 운영자금 | KEB하나은행 | 2024.05.23 | 2025.05.23 | 300,000 | – | – | 300,000 | JPY |
| CJ FOODS MYANMAR CO., LTD. | 계열회사 | 지급보증 | 운영자금 | – | | | 1,800 | – | 1,800 | – | USD |
| CJ LIAOCHENG BIOTECH CO., LTD. | 계열회사 | 지급보증 | 운영자금 | DBS | 2024.03.26 | 2025.03.26 | 350,000 | – | 150,000 | 200,000 | CNY |
| CJ(SHENYANG) BIOTECH CO., LTD. | 계열회사 | 지급보증 | 운영자금 | DBS 외 1 | 2024.12.16 | 2025.12.26 | 400,000 | 40,000 | – | 440,000 | CNY |
| SHANDONG YOUTELL BIOCHEMICAL CO., LTD. | 계열회사 | 지급보증 | 운영자금 | DBS | 2024.02.17 | 2025.02.17 | 50,000 | – | – | 50,000 | CNY |
| CJ INTERNATIONAL TRADING CORP | 계열회사 | 지급보증 | 운영자금 | DBS | 2024.01.31 | 2025.01.31 | 200,000 | – | 100,000 | 100,000 | CNY |
| PT CHEILJEDANG INDONESIA | 계열회사 | 지급보증 | 운영자금 | KDB산업은행 외 6 | 2020.11.25 | 2026.11.26 | 700,000 | 141,000 | – | 841,000 | USD |
| CJ BIO MALAYSIA SDN. BHD. | 계열회사 | 지급보증 | 운영자금 | 수출입은행 외 10 | 2022.03.22 | 2026.03.31 | 470,000 | 38,000 | – | 508,000 | USD |
| | | | | | | | 7,000,000 | – | 7,000,000 | – | JPY |
| CJ BIO AMERICA INC. | 계열회사 | 지급보증 | 운영자금 | BOA 외 1 | 2019.10.31 | 2027.12.02 | 313,255 | – | 30,000 | 283,255 | USD |
| CJ DO BRASIL LTDA. | 계열회사 | 지급보증 | 운영자금 | KDB산업은행 외 2 | 2023.01.09 | 2030.01.09 | 172,000 | – | 16,000 | 156,000 | USD |
| CJ SELECTA S.A. | 계열회사 | 지급보증 | 운영자금 | CITI 외 4 | 2023.03.12 | 2025.03.31 | 320,000 | – | 145,000 | 175,000 | USD |
| CJ EUROPE GMBH | 계열회사 | 지급보증 | 운영자금 | KEB하나은행 외 2 | 2024.02.24 | 2025.03.05 | 90,000 | – | 2,400 | 87,600 | EUR |
| PT CHEIL JEDANG BIO INDONESIA | 계열회사 | 지급보증 | 운영자금 | JPM | 2024.05.31 | 2025.06.03 | 5,000 | – | – | 5,000 | USD |
| PT CJ FEED AND CARE INDONESIA | 계열회사 | 지급보증 | 운영자금 | 신한은행 외 5 | 2020.09.18 | 2050.09.18 | 1,989,000,000 | 398,000,000 | – | 2,387,000,000 | IDR |
| | | | | | | | 20,000 | – | – | 20,000 | USD |
| | | | | | | | 180,000,000 | – | – | 180,000,000 | KRW |
| CJ SHENYANG FEED CO., LTD. | 계열회사 | 지급보증 | 운영자금 | DBS | 2024.03.26 | 2026.04.22 | 350,000 | – | 200,000 | 150,000 | CNY |
| | | | | | | | – | 1,400,000 | – | 1,400,000 | JPY |
| CJ PHILIPPINES, INC. | 계열회사 | 지급보증 | 운영자금 | – | | | 480,000 | – | 480,000 | – | PHP |
| CJ CHEILJEDANG FEED (CAMBODIA) CO., LTD | 계열회사 | 지급보증 | 운영자금 | KB국민은행 | 2024.10.25 | 2025.10.24 | 9,900 | – | – | 9,900 | USD |
| CJ FEED MYANMAR CO., LTD | 계열회사 | 지급보증 | 운영자금 | – | | | 6,700 | – | 6,700 | – | USD |
| CJ CHINA, LTD. | 계열회사 | 지급보증 | 운영자금 | KB국민은행 외 7 | 2022.04.18 | 2052.04.18 | 137,000 | 1,800 | – | 138,800 | USD |
| | | | | | | | 400,000,000 | – | 200,000,000 | 200,000,000 | KRW |
| CJ AMERICA, INC. | 계열회사 | 지급보증 | 운영자금 | KDB산업은행 외 3 | 2024.02.28 | 2029.12.18 | 75,800 | – | – | 75,800 | USD |
| | | | | | | | 300,000,000 | – | 60,000,000 | 240,000,000 | KRW |
| BATAVIA BIOSCIENCE B.V. | 계열회사 | 지급보증 | 운영자금 | SMBC 외 2 | 2023.10.31 | 2027.05.16 | 20,000 | 85,000 | – | 105,000 | EUR |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | CJ QINGDAO FOODS CO., LTD. | 7,114,205 | 120,685 | 17,231,434 | 46,369 | – | 3,358,292 | 103,413 | 16,515,741 | 426,821 | – |
| | CJ LIAOCHENG BIOTECH CO., LTD. | 7,005,470 | 1,035,206 | 89,451,464 | – | – | 7,411,863 | 1,187,209 | 144,532,591 | – | – |
| | CJ (SHENYANG) BIOTECH CO., LTD. | 6,970,588 | 1,129,427 | 180,698,185 | – | – | 7,526,665 | 1,469,178 | 189,814,338 | 2,575 | – |
| | CJ NUTRACON PTY. LTD. | 19,176,183 | 40,784 | 16,161,790 | 282,127 | – | 15,590,708 | 32,124 | 13,272,263 | 152,937 | – |
| | CJ BIO MALAYSIA SDN. BHD. | 2,484,325 | 3,053,132 | 17,179,477 | 197,688 | – | 369,969 | 2,172,291 | 11,858,145 | – | – |
| | PT CHEILJEDANG INDONESIA | 3,923,652 | 3,822,824 | 793,516,432 | 5,450 | – | 1,326,038 | 3,691,333 | 742,821,652 | 9,229 | – |
| | PT CJ FEED AND CARE INDONESIA | – | 3,021,339 | – | – | – | 839,946 | 2,780,375 | – | – | – |
| | CJ DO BRAZIL IND. COM. PROD. ALIM. LTDA.(*1) | 24,938,580 | 2,250,555 | 4,436,793 | 1,093,350 | – | 17,504,233 | 2,537,714 | | 869,148 | – |
| | CJ VINA AGRI CO., LTD. | 6,012,207 | 3,596,807 | – | – | – | 6,225,364 | – | – | – | – |
| | CJ BIO AMERICA INC. | 9,950,171 | 2,526,044 | – | – | – | 10,192,601 | 2,670,419 | – | – | – |
| | CJ AMERICA INC.(*1) | 108,873,883 | 1,210,444 | 16,404,584 | 3,580,775 | – | 143,344,392 | 1,167,803 | 12,715,073 | 3,427,015 | – |
| | CJ EUROPE GMBH.(*1) | 399,888,112 | 374,690 | 32,545,008 | 2,519,996 | – | 403,783,068 | 404,720 | 35,909,202 | 4,192,243 | – |
| | CJ BIOMATERIALS, INC (*1) | 1,703,061 | – | 525,990 | 766,624 | – | 297,332 | – | | 7,385,109 | – |
| | CJ CHINA. LTD.(*1) | 1,809,980 | 1,379,385 | 378,006,086 | 8,643,431 | – | 2,413,353 | 1,087,103 | 713,802,226 | 9,419,775 | – |
| | CJ SE ASIA PTE. LTD. | 6,890,328 | – | – | – | – | 7,584,380 | – | – | 973,614 | – |
| | CJ INTERNATIONAL TRADING CO., LTD.(*1) | 252,941,623 | 85,218 | 12,261,240 | 405,006 | – | 183,691,899 | 101,133 | 12,188,036 | 355,070 | – |
| | CJ CHEILJEDANG MEXICO, S.A. DE C.V.(*1) | 27,015,582 | – | 2,987,089 | 134,666 | – | 30,933,724 | – | 2,648,951 | 116,886 | – |
| | CJ FOODS VIETNAM CO., LTD. | 9,495,375 | 325,412 | 20,133,423 | 71,936 | – | 9,090,305 | 323,955 | 3,028,071 | – | – |
| | CJ FOODS JAPAN CORPORATION | 83,597,379 | 559,077 | 1,023,320 | 569,215 | – | 89,753,915 | 368,063 | 76,186 | 608,614 | – |
| | CJ MAINFROST FOODS GMBH | 20,107,923 | 319,897 | – | – | – | 12,815,732 | 60,943 | – | 47,807 | – |
| | SCHWAN'S COMPANY(*3) | 137,395,343 | 1,707,820 | 1,203,035 | 1,271,797 | – | 136,209,306 | 2,491,051 | 1,693,254 | 804,858 | – |
| | CJ BIO APAC., LTD.(*1) | 27,413,215 | – | 2,710,010 | – | – | 22,117,622 | – | 2,953,154 | – | – |
| | 기타 | 38,650,374 | 3,945,867 | 4,138,223 | 2,084,304 | – | 15,294,500 | 3,257,556 | 3,055,154 | 2,742,690 | – |
| 공동기업 및 관계기업 | 기타 | 38,512 | – | – | – | – | 535,115 | – | 692,076 | 782 | – |
| 기타 특수관계자 (*2) | 씨제이프레시웨이(주) | 384,977,288 | 11,074,101 | 515,586,206 | 18,888,870 | 93,138 | 463,110,358 | 8,911,282 | 480,625,694 | 13,637,208 | – |
| | 씨제이푸드빌(주) | 25,682,238 | 3,925,242 | 594,326 | 1,154,528 | – | 32,228,580 | 3,568,882 | 815,387 | 1,380,942 | – |
| | (주)씨제이이엔엠 | 2,163,071 | 13,146,756 | 166,558 | 6,377,400 | 634,945 | 7,806,813 | 14,648,202 | 124,034 | 5,155,765 | 1,625,393 |
| | (주)씨제이텔레닉스 | 66,232 | 3,607 | – | 14,437,545 | 487,937 | 21,493 | 572 | – | 13,828,561 | 347,684 |
| | (주)슈퍼레이스 | – | 229 | – | 500,000 | – | – | 309 | – | 500,000 | – |
| | 씨제이씨지브이(주) | 301,896 | 3,585,312 | – | 948,802 | – | 1,198,813 | 2,422,268 | 24,148 | 1,322,630 | 251,669 |
| | 씨제이올리브네트웍스(주) | 2,098,711 | 3,214,161 | 4,292,637 | 88,439,293 | – | 3,140,098 | 13,525,744 | 7,005,083 | 84,311,673 | 152,451 |
| | CJ JAPAN CORP. | 18,276,111 | – | 2,241,410 | 875,042 | – | 10,160,144 | – | 1,188,668 | 813,706 | – |
| | 에스지생활안전 | – | – | 75,416 | 47,340 | – | – | – | 409,040 | 4,155 | – |
| | 씨제이올리브영(주) | 1,094,474 | 17,643,208 | 144,716 | 312,633 | – | 4,977,860 | 12,159,971 | 105,922 | 90,199 | – |
| | 기타 | 2,878,118 | 5,158,876 | 13,237,031 | 5,026,391 | – | 984,638 | 4,860,713 | 10,855,164 | 5,274,679 | – |
| 합 계 | | 1,697,551,572 | 144,764,411 | 2,421,493,469 | 761,105,690 | 5,536,391 | 1,723,656,091 | 132,007,267 | 2,703,107,586 | 742,500,190 | 2,999,365 |

(*1) 회사는 해외생산종속기업으로부터 재화를 구매하여, 해외판매종속 및 관계기업을 통해 최종 고객에게 재화를 판매하는 중계무역 거래를 하고 있습니다. 이 중 재화의 매출에 대한 외형상 직접적인 거래상대방은 해외판매종속 및 관계기업임에 따라 매출금액은 최종고객이 아닌 해외판매종속 및 관계기업에 대한 매출액으로 기재하였습니다.

(*2) 제1024호 특수관계자 범위에 포함되지 않으나 독점규제 및 공정거래법에 따른 동일한 대규모기업집단 소속회사가 포함되어 있습니다.

(*3) SCHWAN'S COMPANY의 연결 기준 금액으로, CJ FOODS USA INC.등 종속기업에 대한 매출·매입내역이 포함되어 있습니다.

(*4) 회사가 전기 중 삼해상사(주)로부터 영업양수도한 1,083백만원이 포함되어 있습니다.

# ANNUAL REPORT

(18th Fiscal Year)

Fiscal Year      From     January 1, 2024
                 To       December 31, 2024

Financial Services Commission

To:  Korean Exchange

March 17, 2025

| | |
|---|---|
| Type of entity subject to submission: | Stock-listed Corporation |
| Occurrence of reasons for relief: | N/A |
| Company Name: | CJ CheilJedang Corporation |
| Chief Executive Officer (CEO): | Sohn Kyung-shik, Kang Shin-ho |
| Head Office Address: | 330, Dongho-ro, Jung-gu, Seoul<br>CJ CheilJedang Center<br>Phone:  (02) 6740-1114<br>Website:  http://www.cj.co.kr |
| Person in Charge of Preparation: | Title:  Finance & Accounting Director<br>Name:  Chun Gi-sung<br>Phone:  (02) 6740-1114 |

# [CONFIRMATION BY CEO, etc.]

Confirmation and Signature of the Chief Executive Officer and Others

Certificate of Confirmation

We, as the Chief Executive Director and the Director in Charge of Regulatory Filings of the Company, hereby confirm that we have exercised significant due care in directly reviewing and verifying the contents of this report.  As a result of such review, we confirm that there are no omissions or false statements with respect to any material matters contained or indicated herein, and that no information has been stated or indicated that would cause any material misunderstanding by users of the information disclosed in this report.

We further confirm that, pursuant to Article 8 of the Act on External Audit of Stock Companies, the Company has established and is operating an internal accounting control system.

March 17, 2025

CJ CheilJedang Corporation

| | | |
|---|---|---|
| Chief Executive Director | Kang Shin-ho | (Signature) |
| Director in Charge of Regulatory Filings | Chun Gi-sung | (Signature) |

| balance | Private Placement | - | - | - | - | - | - | - | - | - | - |
| | Total | - | - | - | - | - | - | - | - | - | - |

## (2) Consolidated Basis

(As of December 31, 2024)                                          (Unit: KRW million)

| Residual Maturity | | 1 year or less | over 1 year up to 2 years | over 2 year up to 3 years | over 3 year up to 4years | over 4 yr up to 5 yrs | over 5 yr up to 6 yrs | over 10 yrs up to 20 yrs | over 20 yrs up to 30 yrs | over 30 years | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Outstanding Balance | Public Offering | - | - | - | - | - | - | - | - | - | - |
| | Private Placement | - | - | - | - | - | - | - | - | - | - |
| | Total | - | - | - | - | - | - | - | - | - | - |

## H. Execution of Hybrid Capital Borrowings

The details of issuance and principal terms of hybrid capital securities issued by the Company's subsidiary are as follows.

[CJ CAU TRE FOODS JOINT STOCK COMPANY]

| CATEGORY | | DETAILS OF ISSUANCE TERMS |
|---|---|---|
| Date of Issuance | | September 30, 2024 |
| Amount Issued | | KRW 100,000,000,000 |
| Purpose of Issuance | | Repayment of Existing Hybrid Capital Securities |
| Method of Issuance | | Private Placement |
| Listing Status | | Unlisted |
| Outstanding Balance | | KRW 100,000,000,000 |
| Capital Recognition Details | Accounting Basis | The Company does not bear any contractual obligation to pay the principal and interest of the above hybrid capital borrowings. Therefore, such borrowings are classified as equity. |
| | Capital Recognition Ratio by Credit Rating Agencies, etc. | - |
| Accumulated Unpaid Interest | | - |
| Maturity and Early Redemption Date | | Maturity Date:  September 30, 2054 (extendable at the borrower's option) Early redemption is available on September 28, 2029, which is the date falling 5 years after the issuance date, and on each interest payment date thereafter. |
| Issuance Interest Rate | | • A fixed interest rate of 4.55% per annum for the period from (and including) the issuance date to September 28, 2029 • Thereafter, a fixed interest rate equal to (i) the yield on 5-year Korean Treasury Bonds announced two business days prior to each reset date, plus (ii) a margin of 1.67% per annum, plus (iii) a step-up margin of 0.99% per annum. |
| Priority | | • Senior to the borrower's common stock and preferred stock in liquidation • Except for debts that are expressly stated to rank pari passu with other loan receivables, the securities are subordinated to all remaining debts. |
| Impact on Financial Structure upon Liability Classification | | Increase in the debt-to-equity ratio (CJ CheilJedang Corporation debt ratio increased from 146.3% to 148.3% on a consolidated financial statement basis as of the end of December, 2024.) |
| Other Key Issuance Terms, etc. | | |

## X.  Details of Transactions with Major Shareholders, etc.

1.  Credit Extensions to Major Shareholders, etc.

As of December 31, 2024, the changes in debt guarantees provided to the Company's subsidiaries and related entities are as follows.

[Payment Guarantee]

(Unit: Local Currency in thousands)

| Corporate Name | Affiliation | Description | Purpose | Creditor | Guarantee Period | | Details of Transaction | | | | Currency |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Start Date | Maturity Date | Beginning Balance | Increase | Decrease | Ending Balance | |
| CJ FOODS ASIA HOLDINGS LIMITED | Affiliate | Payment Guarantee | Working Capital | - | - | - | 50,000 | - | 50,000 | - | USD |
| CJ QINGDAO FOODS CO., LTD | Affiliate | Payment Guarantee | Working Capital | BOA and 1 other | 1/17/24 | 12/31/25 | 13,000 | - | - | 13,000 | USD |
| | | | | | | | 120,000 | - | - | 120,000 | CNY |
| CJ FOODS VIETNAM CO., LTD | Affiliate | Payment Guarantee | Working Capital | HSBC and 6 others | 3/3/24 | 12/22/25 | 1,057,140,000 | - | 139,140,000 | 918,000,000 | VND |
| | | | | | | | 35,000 | 10,500 | - | 45,500 | VND |
| CJ CAU TRE FOODS JOINT STOCK COMPANY | Affiliate | Payment Guarantee | Working Capital | DBS and 1 other | 7/30/24 | 9/30/54 | 200,000,000 | 216,400,000 | - | 416,400,000 | VND |
| | | | | | | | 48,500 | - | 8,500 | 40,000 | |
| | | | | | | | 100,000,000 | - | - | 100,000,000 | KRW |
| SCHWAN'S COMPANY | Affiliate | Payment Guarantee | Working Capital | MIZUHO | 11/29/22 | 11/29/25 | 395,000 | - | 100,000 | 295,000 | USD |
| CJ FOODS MANUFACTURING BEAUMONT LLC | Affiliate | Payment Guarantee | Working Capital | KB Kookmin Bank | 10/25/24 | 10/25/27 | 130,000 | - | - | 130,000 | USD |
| CJ MAINFROST FOOD GMBH | Affiliate | Payment Guarantee | Working Capital | Woori Bank and 1 other | 9/30/24 | 9/30/25 | 14,400 | - | 2,400 | 12,000 | EUR |
| CJ RAVIOLLO RUS. LLC | Affiliate | Payment Guarantee | Working Capital | KEB Hana Bank | 5/23/24 | 5/23/25 | 1,326,000 | 102,000 | - | 1,428,000 | RUB |
| CJ FOODS JAPAN | Affiliate | Payment Guarantee | Working Capital | MIZUHO and 3 others | 9/14/23 | 9/14/28 | 20,690,000 | - | 190,000 | 20,500,000 | JPY |
| GYOZA KEIKAKU CO., LTD | Affiliate | Payment Guarantee | Working Capital | KEB Hana Bank | 5/23/24 | 5/23/25 | 300,000 | - | - | 300,000 | JPY |
| CJ FOODS MYANMAR CO., LTD | Affiliate | Payment Guarantee | Working Capital | - | - | - | 1,800 | - | 1,800 | - | USD |
| CJ LIAOCHENG BIOTECH CO., LTD | Affiliate | Payment Guarantee | Working Capital | DBS | 3/26/24 | 3/26/25 | 350,000 | - | 150,000 | 200,000 | CNY |
| CJ (SHENYANG) BIOTECH CO., LTD | Affiliate | Payment Guarantee | Working Capital | DBS and 1 other | 12/16/24 | 12/26/25 | 400,000 | 40,000 | - | 440,000 | CNY |
| SHANDONG YOUTELL BIOTECH CO. LTD | Affiliate | Payment Guarantee | Working Capital | DBS | 2/17/24 | 2/17/25 | 50,000 | - | - | 50,000 | CNY |
| CJ INTERNATIONAL TRADING CORP | Affiliate | Payment Guarantee | Working Capital | DBS | 1/31/24 | 1/31/25 | 200,000 | - | 100,000 | 100,000 | CNY |
| PT CHEILJEDANG INDONESIA | Affiliate | Payment Guarantee | Working Capital | KDB and 6 others | 11/25/20 | 11/26/26 | 700,000 | 141,000 | - | 841,000 | USD |
| CJ BIO MALASIA SDN. BHD | Affiliate | Payment Guarantee | Working Capital | Export-Import Bank of Korea and 6 others | 3/22/22 | 3/31/26 | 470,000 | 38,000 | - | 508,000 | USD |
| | | | | | | | 7,000,000 | - | 7,000,000 | - | JPY |
| CJ BIO AMERICA INC. | Affiliate | Payment Guarantee | Working Capital | BOA and 1 other | 10/31/19 | 12/02/27 | 313,255 | - | 30,000 | 283,255 | USD |
| CJ DO BRASIL LTDA. | Affiliate | Payment Guarantee | Working Capital | KDB and 2 others | 1/9/23 | 1/9/30 | 172,000 | - | 16,000 | 156,000 | USD |
| CJ SELECTA S.A. | Affiliate | Payment Guarantee | Working Capital | CITI and 4 others | 3/12/24 | 3/31/25 | 320,000 | - | 145,000 | 175,000 | USD |
| CJ EUROPE GMBH | Affiliate | Payment Guarantee | Working Capital | KEB Hana Bank and 2 others | 2/24/24 | 3/5/25 | 90,000 | - | 2,400 | 87,600 | EUR |
| PT CHEIL JEDANG BIO INDONESIA | Affiliate | Payment Guarantee | Working Capital | JPM | 5/31/24 | 6/3/25 | 5,000 | - | - | 5,000 | USD |
| PT CJ FEED AND CARE INDONESIA | Affiliate | Payment Guarantee | Working Capital | Shinhan Bank and 5 others | 9/18/20 | 9/18/50 | 1,989,000,000 | 398,000,000 | - | 2,387,000,000 | IDR |
| | | | | | | | 20,000 | - | - | 20,000 | USD |
| | | | | | | | 180,000,000 | - | - | 180,000,000 | KRW |
| CJ SHENYANG FEED CO., LTD | Affiliate | Payment Guarantee | Working Capital | DBS | 3/26/24 | 4/22/26 | 350,000 | - | 200,000 | 150,000 | CNY |
| | | | | | | | - | 1,400,000 | - | 1,400,000 | JPY |
| CJ PHILIPPINES, INC. | Affiliate | Payment Guarantee | Working Capital | - | - | - | 480,000 | - | 480,000 | - | PHP |
| CJ CHEILDEJANG FEED (CAMBODIA) CO., LTD | Affiliate | Payment Guarantee | Working Capital | KB Kookmin Bank | 10/25/24 | 10/24/25 | 9,900 | - | - | 9,900 | USD |
| CJ FEED MYANMAR CO., LTD | Affiliate | Payment Guarantee | Working Capital | - | - | - | 6,700 | - | 6,700 | - | USD |
| CJ CHINA, LTD | Affiliate | Payment Guarantee | Working Capital | KB Kookmin Bank and 7 others | 4/18/22 | 4/18/52 | 137,000 | 1,800 | - | 138,800 | USD |
| | | | | | | | 400,000,000 | - | 200,000,000 | 200,000,000 | KRW |
| CJ AMERICA, INC. | Affiliate | Payment Guarantee | Working Capital | KDB and 3 others | 2/28/24 | 12/18/29 | 75,800 | - | - | 75,800 | USD |
| | | | | | | | 300,000,000 | - | 60,000,000 | 240,000,000 | KRW |
| BATAVIA BIOSCIENCE B.V. | Affiliate | Payment Guarantee | Working Capital | SMBC and 2 others | 10/31/23 | 5/16/27 | 20,000 | 85,000 | - | 105,000 | EUR |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | CJ QINGDAO FOODS CO., LTD. | 7,114,205 | 120,685 | 17,231,434 | 46,369 | - | 3,358,292 | 103,413 | 16,515,741 | 426,821 | - |
| | CJ LIAOCHENG BIOTECH CO., LTD. | 7,005,470 | 1,035,206 | 89,451,464 | - | - | 7,411,863 | 1,187,209 | 144,532,591 | - | - |
| | CJ (SHENYANG) BIOTECH CO., LTD. | 6,970,588 | 1,129,427 | 180,698,185 | - | - | 7,526,665 | 1,469,178 | 189,814,338 | 2,575 | - |
| | CJ NUTRACON PTY. LTD. | 19,176,183 | 40,784 | 16,161,790 | 282,127 | - | 15,590,708 | 32,124 | 13,272,263 | 152,937 | - |
| | CJ BIO MALAYSIA SDN. BHD. | 2,484,325 | 3,053,132 | 17,179,477 | 197,688 | - | 369,969 | 2,172,291 | 11,858,145 | - | - |
| | PT CHEILJEDANG INDONESIA | 3,923,652 | 3,822,824 | 793,516,432 | 5,450 | - | 1,326,038 | 3,691,333 | 742,821,652 | 9,229 | - |
| | PT CJ FEED AND CARE INDONESIA | - | 3,021,339 | - | - | - | 839,946 | 2,780,375 | - | - | - |
| | CJ DO BRAZIL IND. COM. PROD. ALIM. LTDA.(*1) | 24,938,580 | 2,250,555 | 4,436,793 | 1,093,350 | - | 17,504,233 | 2,537,714 | - | 869,148 | - |
| | CJ VINA AGRI CO., LTD. | 6,012,207 | 3,596,807 | - | - | - | 6,225,364 | - | - | - | - |
| | CJ BIO AMERICA INC. | 9,950,171 | 2,526,044 | - | - | - | 10,192,601 | 2,670,419 | - | - | - |
| | CJ AMERICA INC.(*1) | 108,873,883 | 1,210,444 | 16,404,584 | 3,580,775 | - | 143,344,392 | 1,167,803 | 12,715,073 | 3,427,015 | - |
| | CJ EUROPE GMBH.(*1) | 399,888,112 | 374,690 | 32,545,008 | 2,519,996 | - | 403,783,068 | 404,720 | 35,909,202 | 4,192,243 | - |
| | CJ BIOMATERIALS, INC (*1) | 1,703,061 | - | 525,990 | 766,624 | - | 297,332 | - | - | 7,385,109 | - |
| | CJ CHINA, LTD.(*1) | 1,809,980 | 1,379,385 | 378,006,086 | 8,643,431 | - | 2,413,353 | 1,087,103 | 713,802,226 | 9,419,775 | - |
| | CJ SE ASIA PTE. LTD. | 6,890,328 | - | - | - | - | 7,584,380 | - | - | 973,614 | - |
| | CJ INTERNATIONAL TRADING CO., LTD.(*1) | 252,941,623 | 85,218 | 12,261,240 | 405,006 | - | 183,691,899 | 101,133 | 12,188,036 | 355,070 | - |
| | CJ CHEILJEDANG MEXICO, S.A. DE C.V.(*1) | 27,015,582 | - | 2,987,089 | 134,666 | - | 30,933,724 | - | 2,648,951 | 116,886 | - |
| | CJ FOODS VIETNAM CO., LTD. | 9,495,375 | 325,412 | 20,133,423 | 71,936 | - | 9,090,305 | 323,955 | 3,028,071 | - | - |
| | CJ FOODS JAPAN CORPORATION | 83,597,379 | 559,077 | 1,023,320 | 569,215 | - | 89,753,915 | 368,063 | 76,186 | 608,614 | - |
| | CJ MAINFROST FOODS GMBH | 20,107,923 | 319,897 | - | - | - | 12,815,732 | 60,943 | - | 47,807 | - |
| | SCHWAN'S COMPANY(*3) | 137,395,343 | 1,707,820 | 1,203,035 | 1,271,797 | - | 136,209,306 | 2,491,051 | 1,693,254 | 804,858 | - |
| | CJ BIO APAC., LTD.(*1) | 27,413,215 | - | 2,710,010 | - | - | 22,117,622 | - | 2,953,154 | - | - |
| | OTHER | 38,650,374 | 3,945,867 | 4,138,223 | 2,084,304 | - | 15,294,500 | 3,257,556 | 3,055,154 | 2,742,690 | - |
| Joint Ventures & Associates | OTHER | 38,512 | - | - | - | - | 535,115 | - | 692,076 | 782 | - |
| Other Related Parties (*2) | CJ FRESHWAY CO., LTD. | 384,977,288 | 11,074,101 | 515,586,206 | 18,888,870 | 93,138 | 463,110,358 | 8,911,282 | 480,625,694 | 13,637,208 | - |
| | CJ FOODVILLE CO., LTD. | 25,682,238 | 3,925,242 | 594,326 | 1,154,528 | - | 32,228,580 | 3,568,802 | 815,387 | 1,380,942 | - |
| | CJ ENM CO., LTD. | 2,163,071 | 13,146,756 | 166,558 | 6,377,400 | 634,945 | 7,806,813 | 14,648,202 | 124,034 | 5,155,765 | 1,625,393 |
| | CJ TELENIX CO. ,LTD. | 66,232 | 3,607 | - | 14,437,545 | 487,937 | 21,493 | 572 | - | 13,828,561 | 347,684 |
| | CJ SUPERRACE CO., LTD. | - | 229 | - | 500,000 | - | - | 309 | - | 500,000 | - |
| | CJ CGV CO., LTD. | 301,896 | 3,585,312 | - | 948,802 | - | 1,198,813 | 2,422,268 | 24,148 | 1,322,630 | 251,669 |
| | CJ OLIVENETWORKS, CO., LTD. | 2,098,711 | 3,214,161 | 4,292,637 | 88,439,293 | - | 3,140,098 | 13,525,744 | 7,005,083 | 84,311,673 | 152,451 |
| | CJ JAPAN CORP. | 18,276,117 | - | 2,241,410 | 875,042 | - | 10,160,144 | - | 1,188,668 | 813,706 | - |
| | SG SAFETY CORPORATION | - | - | 75,416 | 47,340 | - | - | - | 409,040 | 4,155 | - |
| | CJ OLIVE YOUNG CORPORATION | 1,094,474 | 17,643,208 | 144,716 | 312,633 | - | 4,977,860 | 12,159,971 | 105,922 | 90,199 | - |
| | OTHER | 2,878,118 | 5,158,876 | 13,237,031 | 5,026,391 | - | 984,638 | 4,860,713 | 10,855,164 | 5,274,679 | - |
| | TOTAL | 1,697,551,572 | 144,764,411 | 2,421,493,469 | 761,105,690 | 5,536,391 | 1,723,656,091 | 132,007,267 | 2,703,107,586 | 742,500,190 | 2,999,365 |

*(1) The Company purchases goods from its overseas manufacturing subsidiaries and conducts intermediary trade transactions by selling the goods to end customers through its overseas sales subsidiaries and associates.  In respect of sales of goods, the nominal contractual counterparties are the overseas sales subsidiaries and associates. Therefore, the sales amounts are presented as sales to such overseas sales subsidiaries and associates, rather than to end customers.

*(2) Although they are not included in the scope of Related Parties under Category 1024, companies belonging to the same large enterprise group pursuant to the Monopoly Regulation and Fair Trade Act are included.

*(3) The amounts are based on SCHWAN'S COMPANY's consolidated figures and include sales and purchases with subsidiaries such as CJ FOODS USA INC.

*(4) The amount of KRW 1,083 million acquired from Samhae Commercial Co., Ltd. through a business transfer during the prior period is included.

**CERTIFICATION OF COURT CERTIFIED INTERPRETER**

I, Grace Yoon Yi, certify that I am a Washington state court certified interpreter. I am certified to interpret from English to Korean, and Korean to English, by the Supreme Court of Washington, AOC Certification Number 10791.  I certify that I have translated the above document, Annual Report – 18th Fiscal Year (5 pages), from Korean to English to the best of my ability. I further certify, to the best of my belief, that this is a true and accurate translation.

*/s/  Grace Yoon Yi*

_____
Grace Yoon Yi
Washington State Court Certified Interpreter, AOC #10791

# EXHIBIT D

 **Import**Yeti

Find Any Company's Suppliers

Bill of Lading: **TMESCOVF23001356**

**Bill Type:** House    **Master BOL:** HDMUSGNM32905200 (8)
**Estimated Arrival Date:** 12/23/2023    **Actual Arrival Date:** 12/23/2023

### Consignee *(Buyer/Consignee)*

**Sfc Global Supply Chain Inc**
Raw name: Sfc Global Supply Chain
📍 115 West College Drive Marshall M N 56258 Us, United States

### Shipper *(Seller)*

**Cj Foods Vietnam Co Ltd**
Raw name: Cj Foods Vietnam
📍 - Hiep Phu Lot No Ea2-7 Hiep Phuoc Industria L Zone Stage2 Hiep Phuoc Ward Nha Be District Ho Chi Minh Vn, Vietnam

### Notify Party *(Receiver)*

**Cj Logistics America Llc**
📍 La Branc 18805 S Laurel Park Road Rancho D Ominguez Ca Us, United States

---

### 💼 Shipment details

| | |
|---|---|
| **TEU** ⓘ | 2 |
| **Weight** | 18,400 kg |
| **Quantity** | 756 CTN (Carton) |
| **Value in USD (CIF)** | Different Incoterm Used |
| **HS Code (Not 100% accurate)** | **1902.20** - Preparations of cereals, flour, starch or milk; bakers' wares ; Pasta, whether or not cooked or stuffed (with meat or other substances) or otherwise prepared, such as spaghetti, macaroni, noodles, lasagna, gnocchi, ravioli, cannelloni; couscous, whether or not prepared ; Stuffed pasta, whether or not cooked or otherwise prepared |
| **HTS Code (Pulled from product description)** | 1902.20.90 – Stuffed pasta, whether or not cooked or otherwise prepared |
| **Product Description** | Bbg Vegetable Spring Rolls Minus Degree Celcius |

---

### 📦 Containers & Cargo

**Container** ⓘ

| | |
|---|---|
| **Container ID** | TEMU9688203 |
| **Products Description Raw** | Bbg Vegetable Spring Rolls 1.36Kg (1.36Kg 16Ea)/Ctn Po # : 7138476 Hs Code: 19022090 Container Set At Minus 18 Degree Celcius |
| **Container type** | 4CRO Thermal Container |
| **Load status** ⓘ | L ⓘ |
| **Service Type** ⓘ | CY ⓘ |
| **Marks & Numbers** | N/A |

---

### ⚓ Ports & Carriers

| | |
|---|---|
| **Origin Port** | Vung Tau |
| **Arrival port** | Los Angeles, Ca |

| Place of Receipt | Ho Chi Minh City |
|---|---|
| **Vessel Name** | **One Aquila** |
| **Vessel Code (IMO ID)** | **9806043** |
| Voyage | 023e |
| **Carrier SCAC Code** | **TMES - Times Cargo Logistic Co Ltd** |

⚓ **Container Cost Based on Lane Used**



ASIA ➔ US PACIFIC
**Estimated Cost: $ 1,730**
(▼ -43.61% vs. current rate)

# XENETA

Benchmark my shipments

About   Press   Contact   Privacy   FAQs   Pricing

# EXHIBIT E

**2025  FOREIGN PROFIT CORPORATION ANNUAL REPORT**

DOCUMENT# F06000000395

**FILED**
**Mar 28, 2025**
**Secretary of State**
**4811548597CC**

**Entity Name:** SFC GLOBAL SUPPLY CHAIN, INC.

**Current Principal  Place of Business:**

115 WEST COLLEGE DRIVE
MARSHALL,  MN  56258

**Current Mailing Address:**

115 WEST COLLEGE DRIVE
MARSHALL,  MN  56258  US

**FEI Number: 95-2703251**                                        **Certificate of Status Desired:** No

**Name and Address of Current Registered Agent:**

C T CORPORATION SYSTEM
1200 SOUTH PINE ISLAND ROAD
PLANTATION, FL  33324  US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE: _____

Electronic Signature of Registered Agent                                                              Date

**Officer/Director Detail :**

| | | | | |
|---|---|---|---|---|
| Title | DIRECTOR | | Title | CEO |
| Name | LEE, SOOHEE | | Name | PURI, TONY |
| Address | 115 WEST COLLEGE DRIVE | | Address | 115 WEST COLLEGE DRIVE |
| City-State-Zip: | MARSHALL  MN  56258 | | City-State-Zip: | MARSHALL  MN  56258 |
| | | | | |
| Title | TREASURER | | Title | SECRETARY |
| Name | ANDRIES, HELEN | | Name | XI, SCOTT |
| Address | 115 WEST COLLEGE DRIVE | | Address | 115 WEST COLLEGE DRIVE |
| City-State-Zip: | MARSHALL  MN  56258 | | City-State-Zip: | MARSHALL  MN  56258 |
| | | | | |
| Title | DIRECTOR | | Title | PRESIDENT |
| Name | SCHIEGG, BRIAN | | Name | CARTER, MARK |
| Address | 115 WEST COLLEGE DRIVE | | Address | 115 WEST COLLEGE DRIVE |
| City-State-Zip: | MARSHALL  MN  56258 | | City-State-Zip: | MARSHALL  MN  56258 |
| | | | | |
| Title | ASSISTANT TREASURER | | | |
| Name | JUDD, THOMAS | | | |
| Address | 115 WEST COLLEGE DRIVE | | | |
| City-State-Zip: | MARSHALL  MN  56258 | | | |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: SCOTT XI                                 SECRETARY                    03/28/2025

Electronic Signature of Signing Officer/Director Detail                                                   Date